644 A.2d 230

**Ronald F. COLYER, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 12, 1994.

Decided June 14, 1994.

42

James L. McAneny, for petitioner.

Joanna N. Reynolds, Asst. Counsel, for respondent.

Before COLINS and FRIEDMAN, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Corporal Ronald F. Colyer appeals from an order of the Commissioner of the Pennsylvania State Police (Commissioner) denying Colyer's claim for benefits under the Heart and Lung Act (Act).[1] We reverse.

Colyer became a member of the Pennsylvania State Police in 1966. In 1976, he was assigned to the Bureau of Services Laboratory Division, where his duties included processing evidence at crime scenes. In 1986, Colyer testified at a criminal trial regarding his assistance at the forensic examination of a murder victim, Susan Reinert, in 1979. As a result of that testimony, Colyer was investigated by the Bureau of Professional Responsibility, Internal Affairs Division of the Pennsylvania State Police and also by the Attorney General's office. The purpose of the investigations was to determine whether Colyer had manufactured or planted evidence in the Reinert case or had conspired to do so.

Colyer was repeatedly interviewed by Pennsylvania State Police (Police) investigators during the summer of 1988. During an interview on September 20, 1988, Police investigators accused Colyer of tampering with evidence, advised Colyer of his constitutional rights and informed him that he could be arrested. Over the following weeks, Police investigators repeatedly questioned Colyer and threatened him with arrest

1. Act of June 28, 1935, P.L. 477, as amended, 53 P.S. §§ 637, 638.

and prosecution. The investigation found no evidence of wrongdoing on Colyer's part.

On November 18, 1988, Colyer was hospitalized and diagnosed as having acute major depression. For approximately two years following the onset of his condition, Colyer continued to seek psychiatric treatment and missed numerous days at work. Colyer retired on January 4, 1991.

Colyer applied for workmen's compensation benefits in March, 1989, and was ultimately awarded benefits and attorney's fees and costs. The Police did not appeal this award, but denied Colyer's claim for Heart and Lung benefits on the grounds that Colyer was not injured "in the performance of his duties" as that phrase is used in the Act.

Colyer appealed and an administrative hearing was held on April 30, 1991. The hearing examiner issued a report recommending that benefits be paid to Colyer, as well as costs and attorney's fees. The Police filed exceptions to that recommendation and the Commissioner reversed. The Commissioner specifically rejected the hearing examiner's conclusion that Colyer's injury occurred during "the performance of his duties" as required by the Act.

■ On appeal to this Court,[2] Colyer asserts that the work-relation standard applied in worker's compensation cases is the appropriate standard to apply to cases arising under the Act and that the Commissioner erred in concluding that Colyer's injury did not occur in the performance of his duties.[3]

The Commissioner's findings of fact include the following:

7. ... As a result of the State Police investigation of 1988–89, Corporal Colyer became psychologically distraught and

---

2. Our scope of review in an appeal from a final order of a Commonwealth agency is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

3. Colyer also asserts that he was denied his due process right to a timely hearing and determination of his claim, but he fails to allege any damages as a result, nor does he request any additional relief on these grounds.

sought psychiatric help. Corporal Colyer utilized leave as a result of his illness for a period of time in 1988. Corporal Colyer continued psychiatric help and was seen by two doctors, Dr. Stanley Schneider and Dr. Jagadeesh Moola. Corporal Colyer was first seen by Dr. Moola on November 18, 1988, and remained under his care until his last visit on October 23, 1989. According to Dr. Moola, at the time of his last visit, the claimant denied any significant symptoms of depression and anxiety. On August 9, 1990, he was again treated by Dr. Moola as a result of experiencing symptoms of anxiety and depression. But when seen again on August 28, 1990, the claimant felt that he could handle the symptoms without medication and appeared less anxious and less depressed....

(Commissioner's Adjudication, p. 8.)

The Commissioner also found that Colyer was subpoenaed to testify in February, 1989 in a court proceeding involving the discovery of evidence in the Reinert case; Colyer invoked his Fifth Amendment rights at that hearing; the Police placed Colyer on restricted duty status from February 27, 1989 until June 15, 1989;[4] and Colyer received a report from his commanding officer on September 6, 1989, stating that the lengthy investigation failed to reveal evidence of any violation of any department directive.

The relevant portion of the Act states that "[a]ny member of the State Police Force, ... injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid ... his full rate of salary ... until the disability arising therefrom has ceased." Section 1(a) of the Act, 53 P.S. § 637(a). In addition to the full rate of salary, the Act further provides that members continue to accrue sick leave, annual leave, and other benefits they would otherwise have been entitled to absent the injury. The Act does not define the phrase "performance of his duties".

---

4. Members of the state police on restricted status relinquish their badge and their gun at the end of each shift and are withdrawn from police powers, authorities and responsibilities.

Colyer maintains that the phrase should be interpreted as the equivalent of "arising in the course of employment", the standard as defined in Section 301(c)(1) of the Worker's Compensation Act.[5]  We disagree.

■  The purpose of the Worker's Compensation Act was to substitute a method of accident insurance in place of common law rights and liabilities for all employees covered by its provisions.  *Vescio v. Pennsylvania Electric Co.*, 336 Pa. 502, 9 A.2d 546 (1939).  The Worker's Compensation Act provides five general types of benefits:  earnings loss benefits for total or partial disability;  specific loss benefits;  death benefits;  medical benefits and illegally employed minor's benefits.  Earnings loss benefits are calculated according to a statutory formula and represent that portion of a claimant's average weekly wage which is lost due to a work-related disability.  77 P.S. §§ 511–513.  The provisions of the Worker's Compensation Act are to be liberally construed.  *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981).

■  In contrast, the purpose of the Heart and Lung Act is to provide important public safety personnel with *full* compensation while disabled from an injury which occurs in the performance of duty.[6]  In addition, Section 2 of the Act, 53 P.S. § 638, states that no such absence from duty shall be included in any period of allowed sick leave.  Unlike worker's compensation law, the Act provides compensation only where disability is temporary, and does not apply where disability is permanent.  *Brandt v. Pennsylvania State Police*, 159 Pa.Commonwealth Ct. 66, 632 A.2d 986 (1993).  Finally, the Statutory Construction Act, 1 Pa.C.S. § 1928(b)(8), requires that the language of the Heart and Lung Act be strictly construed.

5.  Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

6.  The language in Section 1(b) of the Act includes "arising directly out of the employment", but applies only to diseases of the heart and tuberculosis of the respiratory system;  our determination here is limited to the relevant language contained in Section 1(a).

■ Although this Court has often used the phrase "work-related" when describing injuries under the Act, in cases other than those arising under Section 1(b) of the Act, this language may not be deemed controlling, but rather a matter of judicial convenience. Upon examining the differences between the Worker's Compensation Act and the Heart and Lung Act, and noting the legislature's deliberate use of different language in Sections 1(a) and 1(b) of the Act, we hold that the standard of work-relation set forth in the Worker's Compensation Act is not applicable in this case.

■ Thus, the remaining issue is whether the Commissioner erred in concluding that Colyer's injury did not occur during the performance of his duties as contemplated by the Act.

The Police do not dispute that Colyer's injury resulted from the investigation of the authenticity of evidence in the Reinert case, or that Colyer was duty-bound to participate in the investigation. But the Police argue that Colyer's "performance of duties" in this case occurred in 1979, and that being the *subject* of an investigation does not constitute performance of duty.

Corporal William R. Clancy, Jr. was assigned to the Bureau of Professional Responsibility in 1988; he was assigned to the investigation and interviewed Colyer on several occasions. Corporal Clancy testified at the hearing that, at the outset, the purpose of the investigation was to determine the validity of the evidence and that the investigation eventually focused on Colyer and another individual. Colyer's duty to participate in the investigation did not depend on the investigation's focus nor did it end when he became its primary target.

The Police maintain that the Act is intended to compensate an officer only when he or she is injured in the performance of a hazardous duty. This interpretation assumes language not contained in the statute, contradicting the requirement that this statute be strictly construed. Such an interpretation would lead to unjust results, eliminating countless members whose assignments, whether permanent or temporary, are not

innately hazardous, despite the plain language of the Act which applies to "[a]ny member of the State Police Force". 53 P.S. § 637. The Police admit that the primary purpose of the Act is to provide uninterrupted income to police officers and firemen and, thereby, assure a speedy return of the disabled officer to service essential to the community. *Iben v. Monaca Borough*, 158 Pa.Superior Ct. 46, 43 A.2d 425 (1945). Surely the Police would not have us hold that only assignments typically deemed hazardous are essential to the community.

Based on the above analysis, we hold that the Commissioner erred in concluding that Colyer's injury did not occur in the performance of his duties, as those words are used in the Act.

The Commissioner's findings, however, provide an inadequate basis on which to determine the amount of benefits due Colyer. In his Finding of Fact 7, the Commissioner states that "[n]o evidence exists to substantiate the finding that from the end of 1988 onward, [Colyer] has continued to miss work as a result of stress that he was under." (Commissioner's Adjudication, p. 8.) This statement conflicts with numerous other findings made by the Commissioner. For instance, the Commissioner found that: Colyer's injury was caused by the stress of the investigation which continued into 1989; Colyer testified in court in February 1989, and as a result was placed on restricted duty status from February 27, 1989 until June 15, 1989; Colyer did not receive a report informing him that the investigation had concluded with no evidence of wrongdoing on his part until September 6, 1989; and Colyer was treated by Dr. Moola for symptoms of depression and anxiety as late as August 28, 1990.

Contrary to the above quoted statement, the record, including the Commissioner's own findings of fact, contains substantial evidence that Colyer missed work in 1989 and 1990, using annual leave, sick leave, and personal leave, because of continuing depression and anxiety. Thus, a remand to determine the amount of the award due Colyer is necessary.

■ Lastly, we address Colyer's request for attorney's fees and costs, pursuant to Section 3(a) of the Act of December 13,

1982, P.L. 1127, *as amended,* 71 P.S. § 2033(a) (Cost Act). This section provides for the award of attorney's fees and costs to a prevailing party where a Commonwealth agency has initiated an adversary adjudication and there has been a determination that the position of the agency was not substantially justified. The hearing examiner concluded that Colyer was entitled to fees and costs on the grounds that the position of the Police was not substantially justified. However, the Act does not define the language on which the issue here depends, and the courts have used the word "hazardous" in describing police duties. *See, e.g., Cunningham v. Pennsylvania State Police,* 510 Pa. 74, 507 A.2d 40 (1986). These circumstances offer justification for the position of the Police in this appeal.

Accordingly, the order of the Commissioner insofar as it denies Colyer benefits under the Act is reversed, and the case is remanded to the Commissioner for findings of fact consistent with this opinion. The denial of attorney's fees and costs is affirmed.

FRIEDMAN, Judge, concurring and dissenting.

I concur in part and dissent only on the issue of attorney's fees. I agree with the hearing officer that the position of the Police was not substantially justified and, therefore, I believe that Colyer is entitled to attorney's fees and costs.