**John J. DONNINI, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided Feb. 10, 1998.

---

James L. McAneny, Harrisburg, for petitioner.

Michael C. Barrett, Harrisburg, for respondent.

Before DOYLE and LEADBETTER, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

John J. Donnini (Claimant) appeals from an order of the Commissioner of the Pennsylvania State Police (Commissioner), denying his claim for benefits under the Heart and Lung Act (Act).[1] The facts underlying the appeal follow.

Claimant is a helicopter pilot for the Pennsylvania State Police (PSP) with twenty-seven years of service. Prior to the incident giving rise to this matter, several burglaries had been committed in the vicinity of Claimant's residence, and Claimant, due to the proximity of these crimes, had both a personal and a professional interest in their investigation. Prior to the incident, as part of his duties as a helicopter pilot, Claimant had been engaged in looking for strange vehicles in the area. On March 3, 1995, at 9:00 p.m., Claimant, who was off duty, was returning to his home after picking up a pizza. Claimant was in civilian clothing, driving his private vehicle, and had nothing which outwardly indicated that he was a State Police Officer. Before arriving at his house, however, he noticed a vehicle parked near his driveway.

---

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638.

The vehicle had no lights on and was parked facing on-coming traffic with half of the vehicle still on the road. Partly motivated by suspicion resulting from the burglaries in the area, Claimant decided to approach the car. When Claimant approached this vehicle, it drove off.

Immediately thereafter, Claimant observed a truck parked in his alfalfa field with its lights on. Claimant drove his vehicle into the alfalfa field and parked it between the truck and the only exit road. As he approached the truck, he motioned for the truck to come towards him. Initially, the truck proceeded slowly toward Claimant, but when it got closer, its speed increased, and Claimant was forced to step out of its way to avoid being hit. However, when the truck passed by him, Claimant grabbed a hand hold on the truck's door and identified himself as a police officer. During this time, he was dragged thirty feet and was thrown from the truck. As a result, Claimant sustained injuries to his neck, back, left shoulder, right knee, and both hands, which required hospitalization for one day. The next day, Claimant gave a description of the two suspects to the police. Subsequently, the suspects were arrested and charged with recklessly endangering another person, criminal trespass, and trespass by motor vehicle.

Thereafter, Claimant applied for Heart and Lung Benefits pursuant to Section 1(a) of the Act, 53 P.S. § 637(a), but, on May 10, 1995, the PSP denied his claim. Claimant appealed this decision, and a hearing was conducted before an arbitrator. At the hearing, Claimant testified concerning the incident, and the PSP presented no evidence to contradict Claimant's version of what had occurred. However, the PSP did submit a copy of Police Field Regulation 1–2, Section 2.21, which requires off-duty officers to take action in "all serious police matters brought to their attention." On November 7, 1996, the arbitrator issued a proposed report and recommendation in which he concluded that

Claimant was ineligible for benefits under the Act, because Claimant's actions on March 3, 1995, did not encompass the performance of his duties, but rather, Claimant was acting solely as a private citizen. On March 10, 1997, the Commissioner adopted the findings and conclusions of the arbitrator, and this appeal followed.

On appeal to this Court,[2] Claimant argues that the arbitrator's findings of fact and conclusions, which were adopted by the Commissioner, were not supported by substantial evidence. Specifically, Claimant argues that his actions were those of a State Police Officer and not solely those of a private citizen.

Section 1(a) of the Act provides for full compensation to be paid to State Police Officers, as well as other specifically-identified public service employees, who sustain temporary disabilities during the performance of their duties. Specifically, the Act provides that "[a]ny member of the State Police Force ... **who is injured in the performance of his duties** ..." is entitled to such benefits. Section 1(a) of the Act, 53 P.S. § 637 (emphasis added). In interpreting this section, we have noted that the standard of "performance of duties" is neither limited to the performance of hazardous duties nor is it as liberal as the "course and scope of employment" standard contained in the Workers' Compensation Act.[3] *Colyer v. Pennsylvania State Police*, 165 Pa.Cmwlth. 41, 644 A.2d 230 (1994). Likewise, we have also noted that the Act itself is to be strictly construed pursuant to Section 1928(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b). *Colyer.*

In *McCommons v. Pennsylvania State Police*, 165 Pa.Cmwlth. 280, 645 A.2d 333, *petition for allowance of appeal denied*, 539 Pa. 671, 652 A.2d 841 (1994), the claimant was injured while driving to a meeting of the Pennsylvania State Troopers Association. McCommons argued that, because he was given leave to attend the meetings and the

**2.** Our standard of review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Brandt v. Pennsylvania State Police*, 159 Pa.Cmwlth. 66, 632 A.2d 986 (1993), *petition for allowance of appeal denied*, 537 Pa. 668, 644 A.2d 1204 (1994).

**3.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

union was authorized under the Association's collective bargaining agreement, his attendance was in the performance of his duties. We rejected this claim and denied the claimant benefits because we concluded that participation in the activities of the Association or one of its committees is not a duty assigned to a policeman in his capacity as a law enforcement officer.

Similarly, in *Allen v. Pennsylvania State Police*, 678 A.2d 436 (Pa.Cmwlth.1996), *petition for allowance of appeal denied*, 546 Pa. 696, 687 A.2d 379 (1997), we concluded that an officer who injured his hand on a towel dispenser in a State Police locker room while preparing to begin his shift was not injured while performing his duties. We noted that to hold otherwise would permit the award of benefits in a case where the officer was injured at home performing a task in preparation for his shift that he could perform at work, such as washing his hands or cutting a sandwich to be eaten during work. We concluded that this type of injury was outside of the intent of the General Assembly in creating the Heart and Lung Act.

Conversely, in *Colyer*, we granted Heart and Lung benefits to a State Police Officer who was hospitalized for depression as the result of an official investigation which focused on whether Colyer had manufactured evidence in a particular case. We concluded that, although the investigation by the PSP was outside of Colyer's duties as a police officer, Colyer was obligated to cooperate with the investigation as a PSP officer. Therefore, he was performing a police function when he was injured.[4]

■ The common underlying principle of these three cases is that, **in order for a claimant to be injured "in the performance of his duties," he must be injured as a result of an event which triggers or requires an official police response.** In *Colyer*, the triggering event that required an official response was the investigation in which Colyer was required to cooperate *as an officer*. He suffered his injury as a result of his participation in this investigation. Conversely, in *McCommons* and *Allen*, this necessary triggering event was absent because neither case presented a situation in which an officer was required to make an official police response or take police action. McCommons was not required as an officer to attend Association meetings, nor was Allen required as an officer to prepare for work at the police barracks.

■ In the present case, we conclude that a "triggering event" requiring an official police response did occur when the suspect's truck sped toward Claimant and nearly struck the officer. Clearly, attempting to strike an individual with a truck and committing a criminal trespass naturally provokes and warrants a response by the police. Thus, when the truck passed Claimant, he grabbed onto the truck and identified himself as a State Police Officer. Thus, Claimant ceased to function solely as a private citizen and began to operate, at least in part, as a State Police Officer. Therefore, he was performing his duty as a police officer when he suffered the temporary injury.

■ In response, the PSP makes two arguments. First, the PSP argues that, because the suspects in this case were charged only with summary offenses, Field Regulation 1–2, Section 2.21 did not require Claimant to act and, therefore, he was not performing his duties when he was injured. However, we must point out that the standard contained in the field regulation is not the same standard as "performing one's duties" under the Heart and Lung Act. Although the language of the Act, such as the

4. Colyer had been assigned to the PSP's laboratory when he testified at a criminal trial regarding his assistance in the forensic examination of a murder victim, Susan Reinert, in 1979. As the result of that testimony, Colyer was investigated by PSP's Internal Affairs Division and by the Attorney General's office to determine if he had manufactured or planted evidence in the case or had conspired to do so. Although no evidence of any wrong-doing on Colyer's part was found, PSP investigators repeatedly questioned him, accused him of tampering with evidence, advised him of his constitutional rights, and informed him that he could be arrested. Colyer was hospitalized in November of 1988 and diagnosed as having acute major depression; for two years thereafter he needed psychiatric treatment and missed numerous days at work before retiring from the PSP on January 4, 1991.

phrase "performing their duties" must be strictly construed, even a strict construction of this phrase encompasses more than duties that involve "serious police matters" under the PSP's Field Regulation.

We also reject this argument because, in *Colyer*, we declined to make a distinction between hazardous and non-hazardous duties which injure an officer. We noted that such an interpretation assumes language that is not in the Act. Accordingly, we decline to make a distinction between an injury which occurs during the performance of "serious police matters" and an injury which occurs during the performance of less significant police matters.

■ Moreover, we decline to adopt such an interpretation because it would require each off-duty officer to make a conscious, split-second evaluation of the nature and gravity of the crime that will ultimately be pursued in Court. In the present case, the investigating officer recommended that the suspects be charged with the felony crime of aggravated assault, and we cannot say that Claimant's perception of his circumstances at that time, *i.e.*, that the incident was serious in nature, was unreasonable. The lesser summary offenses were merely those which the district attorney subsequently chose to pursue, a decision fully within his discretion. Had charges of aggravated assault been brought, as the investigating officer requested, Claimant technically could have been subjected to disciplinary proceedings had he failed to act. Therefore, we reject the PSP's argument that, because the suspects in the present case were only charged with summary offenses, Claimant was not performing his duty as a State Police Officer.

■ Second, the PSP argues that Claimant could have reached the same result, *i.e.*, the apprehension of the occupants of the truck, without using the tactics that he used. However, the Act does not indicate that a Police Officer is entitled to benefits only when he is undertaking the most prudent measures in a particular situation. Moreover, such a requirement ignores the realities of modern day police work. The Act does not require such a determination, and we decline to insert such a requirement into the Act.

Accordingly, we conclude that Claimant suffered a temporary injury during the performance of his duties as a State Police Officer and is, thus, eligible to receive benefits under the Act. In reaching this conclusion, however, we wish to make it clear that the principles which we articulate in this appeal are applicable to the injury of **an off-duty officer** and, of course, address only that factual circumstance. It is obvious that the statutory interpretation of the phrase "injured in the performance of his [/her] duties" is an issue which is factually sensitive, and, because of that, the principles which we articulate today may not be apposite under other circumstances.

Order reversed.

### *ORDER*

**NOW**, February 10, 1998, the order of the Commissioner of the Pennsylvania State Police in the above-captioned matter is hereby reversed.