**Thomas V. McLAUGHLIN, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 6, 1999.
Decided Dec. 10, 1999.

James L. McAneny, Harrisburg, for petitioner.

Thomas F. Jakubiak, Harrisburg, for respondent.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Thomas V. McLaughlin petitions for review of the March 5, 1999 order of the Pennsylvania State Police (PSP) Commissioner (Commissioner) denying McLaughlin benefits under the Heart and Lung Act (Act), Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638. For the reasons that follow, we reverse the Commissioner's order denying benefits.

The facts are as follows. McLaughlin has been a member of the PSP since March 15, 1982. On March 30, 1998, he was scheduled to work eight continuous paid hours with no specifically assigned period of time for lunch. On that date, McLaughlin stopped at a restaurant for a meal and placed a radio call to the police station notifying it that he was stopping.

He wore his uniform and equipment belt into the restaurant and remained accessible to the station by a patrol radio on his person.

His behavior was pursuant to PSP Field Regulation (FR) 1–2.27, which provides as follows:

> Members on continuous duty for a period of eight hours or more shall be permitted to suspend patrol or other assigned activity, subject to immediate call at all times, for the purpose of consuming one meal during their tour of duty within their assigned patrol zone, but only for such period of time as is reasonable or necessary and not to exceed thirty minutes. Members shall contact and advise their Station of the location of the stop in order to provide for emergency communication if necessary.

Reproduced Record (R.R.) 66a.

After consuming his meal, McLaughlin left the restaurant and headed for his patrol car. While approaching his patrol car, McLaughlin was injured when he fell and broke his arm. As a result of this injury, McLaughlin remained out of work until May 18, 1998.

McLaughlin subsequently applied for Heart and Lung benefits as a result of this incident. After that claim was denied, he requested an administrative hearing. An independent arbitrator conducted a hearing where both parties were represented by counsel. On December 14, 1998, the arbitrator recommended that McLaughlin be found eligible for benefits. (R.R. 73–85a.) However, the Commissioner ruled that McLaughlin was not entitled to benefits, finding that his injury did not occur in the performance of his duties. McLaughlin's timely appeal to this Court followed.[1]

In pertinent part, Section 1(a) of the Act provides as follows:

> *Brandt v. Pennsylvania State Police*, 159 Pa. Cmwlth. 66, 632 A.2d 986 (1993), *allocatur denied*, 537 Pa. 668, 644 A.2d 1204 (1994).

---

1. We are limited to determining whether necessary findings of fact are supported by substantial evidence, constitutional rights were violated, or an error of law was committed.

Any member of the State Police Force ... *who is injured in the performance of his duties* ... and by reason thereof is temporarily incapacitated from his duties, shall be paid by the Commonwealth of Pennsylvania ... his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased.

53 P.S. § 637(a) (emphasis added).

Here, McLauglin is essentially arguing that he was in the performance of his police duties when he was injured and therefore is entitled to benefits under the Act.

In response, the PSP essentially argues that because McLaughlin was out on lunch, the injury was not sustained while he was in the performance of his duties and as such, he is not entitled to benefits.

As we have noted in the past, the Act "does not define the phrase 'performance of his duties'." *Colyer v. Pennsylvania State Police*, 165 Pa.Cmwlth. 41, 644 A.2d 230, 233 (1994). Where a statute or ordinance does not define a term, we are instructed that the ordinary dictionary definition is to be accorded to such a term. 1 Pa.C.S. § 1903; *See, e.g., Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988). "Duties" is merely the plural of duty. Duty is defined in relevant part as:

**1:** conduct due to parents and superiors: RESPECT **2 A:** obligatory tasks, conduct, service, or functions that arise from one's position (as in life or a group) **b** (1): assigned service or business (2): active military service (3): a period of being on duty.

Merriam Webster's Collegiate Dictionary 360 (10th ed.1994).

■ In addition to looking to the dictionary definition, we also turn to previous case law construing the pertinent phrase. As an initial matter we must note that merely because McLaughlin was on duty at the time of his accident, i.e., he was on a continuous 8–hour shift, such does not entitle him to benefits. This is so notwithstanding that pursuant to the dictionary definition of "duty," meaning, inter alia, a "period of being on duty" might seem to entitle him to benefits. For we have previously rejected the contention that merely because an officer is hurt while on duty, such entitles him to benefits pursuant to the Act. In *Mitchell v. Pennsylvania State Police*, 727 A.2d 1196 (Pa.Cmwlth.1999), a police officer while on duty, toward the end of his shift on a cold January day, left his post, with his supervisor's permission and went out into the parking lot to start up his personal car to let it run and warm up in preparation for his departure. On his way to his car, the officer slipped on ice and injured himself. He applied for benefits pursuant to the Act but was denied by the Commissioner. The officer petitioned this court for review and we upheld the Commissioner's denial of benefits notwithstanding the fact that his injury occurred while he was on duty. We reasoned therein that because Mitchell had no police duty to go out and warm up his car, i.e., he was under no official obligation to warm up his personal car, he was in fact "deviating from those [police] duties to perform a 'personal mission,' to borrow a term from workers' compensation law parlance." *Mitchell*, 727 A.2d at 1198.

Conversely, we have also held that even though a police officer is not on paid duty, so long as he is injured while performing police duties, he is entitled to benefits pursuant to the Act. *See, e.g., Donnini v. Pennsylvania State Police*, 707 A.2d 591 (Pa.Cmwlth.1998). In *Donnini*, an off-duty officer, in civilian clothing, observed suspicious behavior on his premises, namely a truck had parked in his field. There had been a series of burglaries committed in the vicinity of his home. Part of his assigned duties had been to look for strange vehicles in the area, given the recent series of burglaries. The officer approached the truck and motioned for it to approach him. The truck sped toward him and he had to step out of the way to avoid being run over, however, he grabbed

the side of the truck and identified himself as a police officer. The officer was dragged thirty feet and thrown from the truck. He sustained injuries and applied for benefits pursuant to the Act. The Commissioner denied him benefits. He petitioned this court for review. We reversed. We reviewed several prior cases construing the Act and held that in "order for a claimant to be injured 'in the performance of his duties,' he must be injured as a result of an event which triggers or requires an official police response." *Donnini*, 707 A.2d at 594 (emphasis deleted). Under the facts of *Donnini*, we held that the circumstances which the off-duty officer encountered required an official police response and therefore the officer was injured in the performance of his duties and entitled to benefits under the Act. We reasoned that

> attempting to strike an individual with a truck and committing a criminal trespass naturally provokes and warrants a response by the police. Thus, when the truck passed Claimant, he grabbed onto the truck and identified himself as a State Police Officer. The Claimant ceased to function solely as a private citizen and began to operate, at least in part, as a State Police Officer. Therefore, he was performing his duty as a police officer when he suffered the temporary injury.

*Donnini*, 707 A.2d at 594.

We further noted though, that the holding in *Donnini* was limited to the circumstances of an injury to an off-duty officer. This makes sense. The language requiring that an injury occur as a "result of an event which triggers or requires an official police response" would not make much sense in the context of a desk officer who is injured, for example, by an electric short in a computer while the officer is on duty and entering data into the computer. Such injury would presumably be compensable under the Act as the injury occurred while the officer was in the performance of his duties notwithstanding that there was no event which triggered an "official police response."

■ Both *Mitchell* and *Donnini* indicate that the dispositive inquiry to determine if an officer was injured in the performance of his duties is whether the officer was engaging in an obligatory task, conduct, service, or function that arose from his or her position **as a State Police officer** as a result of which an injury occurred, irrespective of whether the officer was on duty at the time.

Likewise, the other cases decided by this court also indicate that the dispositive inquiry is whether the officer suffered an injury as a result of engaging in an obligatory task, conduct, service, or function that arose precisely from his or her position as a State Police officer. *Compare Colyer v. Pennsylvania State Police*, 165 Pa. Cmwlth. 41, 644 A.2d 230, 233 (1994) (an officer who suffered depression as a result of his required participation in an internal affairs investigation of him was entitled to benefits because the officer was "duty-bound [in his capacity as a State Police officer] to participate in the investigation.") *with McCommons v. Pennsylvania State Police*, 165 Pa.Cmwlth. 280, 645 A.2d 333 (1994), *allocatur denied*, 539 Pa. 671, 652 A.2d 841 (1994) (officer injured in an auto accident while on administrative leave from the Police force while en route to attend a joint grievance committee meeting was not entitled to benefits because he had no duty in his capacity as a police officer to attend this meeting; rather his duty arose solely from his capacity as a member of the police union, thus his injury did not arise in the performance of his police duties); *and Feineigle v. Pennsylvania State Police*, 680 A.2d 1220, 1223 (Pa.Cmwlth.1996), *allocatur denied*, 546 Pa. 697, 687 A.2d 380 (1997) (off-duty officer injured while practicing weapons firing with his service revolver in order to prepare for a mandatory test of firearms competency administered by the State Police was not entitled to benefits under the Act

because he was *"voluntarily* practicing for his upcoming weapons qualification during off-duty hours" and as such was not engaged in a task or conduct required by the State Police).

Two cases appear somewhat not in accord with the foregoing principles. They are *Allen v. Pennsylvania State Police,* 678 A.2d 436 (Pa.Cmwlth.1996), *allocatur denied,* 546 Pa. 696, 687 A.2d 379 (1997) and *Lee v. Pennsylvania State Police,* 707 A.2d 595 (Pa.Cmwlth.1998). In *Allen,* an off-duty officer arrived early for his scheduled shift. He changed into his uniform in a locker area provided by the State Police and washed his hands, when he went to dry them, the paper-towel dispenser in the locker room broke and caused a cut and an injury to the officer's hand. The officer sought benefits pursuant to the Act. The Commissioner denied benefits and we affirmed. The officer in *Allen* argued that "he is required [by the State Police] to be fully dressed, and properly groomed, at the beginning of his shift. Accordingly, he assert[ed], his actions in the locker room prior to the beginning of his shift were necessary to fulfill his duty." *Allen,* 678 A.2d at 438. In *Lee,* an off-duty officer after having worked one 8–hour shift was returning to work another 8–hour shift after having been off-duty for roughly 8–9 hours. The officer was driving an unmarked police car when he was involved in a car accident which caused him injuries. He applied for benefits pursuant to the Act which the Commissioner denied. This court affirmed the Commissioner's denial of benefits despite the fact that certainly the officer had a duty to report to work.

▆▆▆ In both *Allen* and *Lee,* it is beyond cavil that the officers had a duty to come to work for their scheduled shifts properly attired and in a timely fashion. However, in both cases, notwithstanding this duty, we concluded that they were not entitled to benefits pursuant to the Act. These results are justified because the phrase "in the performance of his duties" means officers' duties in their capacities precisely as police officers. In other words, an off-duty officer's obligation to show up on time to work and be properly prepared to undertake one's tasks is not a duty arising from their capacity as police officers but rather a general duty of every employee and, as such, not within the meaning of the statutory language of the Act. *See, e.g., Allen,* 678 A.2d at 438 (such activities as preparing to come to work "do not constitute, in and of themselves, a part of the officer's duty."). We find that construing the statutory phrase, "in the performance of his duties" to exclude those activities necessary to arrive at work on time and in appropriate attire gives effect to the narrow construction we are mandated to give to the statutory language. For "[t]he rules of statutory construction mandate that we strictly construe the phrase 'in the performance of his duties'." *Mitchell,* 727 A.2d at 1197. Thus, *Allen* and *Lee* are indeed in accord with the general principle distilled above that "in the performance of his duties" means in the performance of his duties which arise from his capacity as a police officer.[2] This does not mean only those

**2.** Moreover, while we noted above that an officer being on or off duty is not dispositive of whether an injury occurred in the performance of duties, it is certainly one factor to be considered. Where an officer is on duty, it is more likely that an injury which occurs is one that occurs in the performance of his duties in contrast to where an officer is not on duty and an injury occurs. We observe that in *Lee,* the trooper was off duty. This is one factor that distinguishes the present case from *Lee.* In addition, in *Lee,* it was determined that the officer's "accident had nothing to do with police action, but was purely personal in nature...." *Lee,* 707 A.2d at 598. In contrast here, as will be shown below, Trooper McLauglin's returning to his patrol car, after he finished his lunch was pursuant to a police duty imposed upon him by FR 1–2.27 and thus unlike in *Lee,* McLaughlin's actions in returning to his patrol were not "purely personal in nature" but pursuant to FR 1–2.27. In addition, that *Lee* was limited to its unique facts is made clear by the *Lee* opinion itself when the court stated that "[i]t is obvious that the statutory interpretation of the phrase 'injured in the performance of his [/her] duties'

duties unique to police officers such as making arrests, investigating crimes, etc. *See, e.g., Colyer,* 644 A.2d at 233, rejecting the Commissioner's contention that the Act was only intended to bestow benefits when an officer was injured in the course of performing hazardous police duties. Instead, the phrase includes any duties assigned to a police officer.

█ Having determined the general governing principles of law, we turn now to consider the specific facts and arguments of this case. While McLaughlin maintains that he was injured in the performance of his duties, the PSP argue that he was not engaged in performing any police duties. Specifically, the PSP contend that

> Claimant [i.e., McLaughlin] in the instant case was at lunch. He was on his own. He could go to any restaurant he chose. He could and did choose the time. He might have brought his own lunch.... Had he chosen, he might not eat at all. In accordance with the contract and FR 1–2.27 the claimant suspended the performance of his duty to take a meal. He does not have a police duty to eat. It is permissive that he do so. Action that is permissive does not become [a] duty simply by that permission.

PSP's brief at pp. 7–8. The PSP assert that McLaughlin "had not yet returned from lunch" at the time of the injury. PSP's brief at p. 8.

As an initial matter, we must disagree with the PSP's factual description of events. Contrary to the PSP's assertion, McLaughlin was not at lunch at the time of the injury; he had finished lunch. *See* R.R. at 8a–9a. McLaughlin testified that he had finished eating his lunch. *Id.* The significance of this fact is that according to FR 1–2.27 members who are on continuous duty shall be permitted to suspend patrol or other assigned activity for the purpose of consuming one meal "during their tour

of duty ... but only for such period of time as is reasonable or **necessary** and not to exceed thirty minutes." (emphasis added). According to McLaughlin's testimony, he had finished "consuming [his] one meal." Thus the period of time which was necessary for consuming that one meal was over and thus pursuant to the language of FR 1–2.27, so was the suspension of McLaughlin's patrol. As he testified, he was supervising the patrols and was going back out on the road to do so. R.R. at 8a. As the period of suspension of his assigned activity was over, he was duty bound to return to his patrolling. Having finished his lunch, his patrol was no longer suspended and he had an obligation as a police officer to resume that patrol. In attempting to perform this duty, he, of necessity, had to go to and reenter his patrol car. In attempting to do so, he tripped and injured himself. Hence, McLaughlin did not injure himself while at lunch as the PSP erroneously contend; rather, he injured himself in attempting to fulfill his duty to go back out on patrol after having completed his lunch. Thus, the Commissioner erred in concluding that McLaughlin was not entitled to benefits under the Act. As McLaughlin sustained injuries in the performance of his duty in his capacity as a police officer to go out on patrol, he is entitled to benefits pursuant to the Act.

Thus, we reject the PSP's reliance on *McCommons.* In *McCommons,* the officer therein was under no duty in his capacity as police officer to attend the grievance committee meeting, unlike here where McLaughlin was under a duty in his capacity as a police officer to get into his patrol car and resume patrolling. Likewise, the PSP's reliance on *Mitchell* is unfounded. In *Mitchell,* while it is true the officer therein was on the clock as was McLaughlin here, the officer therein had no duty in his capacity as a police officer to go to his personal car and warm it up in preparation

is an issue which is factually sensitive, and, because of that, the principles which we artic-

ulate today may not be apposite under other circumstances." *Lee,* 707 A.2d at 598–99.

to leave work whereas here, McLaughlin was duty bound to return to his car and resume patrolling.

As the Commissioner committed an error of law in construing the statutory phrase "in the performance of his duties" we are required to reverse the Commissioner's order which denied McLaughlin benefits pursuant to the Act.

## ORDER

AND NOW, this 10th day of December, 1999, the March 5, 1999 order of the Pennsylvania State Police Commissioner is reversed.

Senior Judge JIULIANTE dissents.