### Richard DAVY and Nicholas Loffredo, Petitioners

v.

### PENNSYLVANIA STATE POLICE, Respondent.

Commonwealth Court of Pennsylvania.

Argued April 4, 2005.

Decided June 10, 2005.

Ian J. Blynn, Harrisburg, for petitioners.

Joanna N. Reynolds, Asst. Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

Trooper Richard Davy (Trooper Davy) and Trooper Nicholas Loffredo (Trooper Loffredo), (collectively, the Troopers) petition for review of the adjudication of the Commissioner (Commissioner) of the Pennsylvania State Police (Police) which found the Troopers ineligible for benefits under the act popularly known as the Heart and Lung Act (Act)[1] for the injuries they sustained on October 6, 2003.

The Troopers were members of the Police stationed in Lamar, Pennsylvania. On October 5, 2003, the Troopers traveled to Beaver, Pennsylvania to conduct surveillance in a homicide investigation. Beaver is approximately a three hour drive from the Lamar station. While in Beaver, the Troopers stayed at a Holiday Inn Express near the Beaver Valley Mall. On October 6, 2003, the Troopers began working at approximately 5:00 a.m. and conducted surveillance for approximately four hours. They then returned to their hotel and slept for a few hours. The Troopers then went to the Beaver Borough Police Department, met with Sergeant Dan Magar, and informed him that they were conducting surveillance in the area. The Troopers returned to the hotel and worked out in the hotel gym. At approximately 5:00 p.m., the Troopers went to dinner at a Chi Chi's restaurant at the Beaver Valley Mall. After dinner, the Troopers returned to work and conducted surveillance for one hour. The Troopers were under no obligation to eat at Chi Chi's. The Troopers each signed time sheets that stated that they worked from 8:00 a.m. until 4:00 p.m. on October 6, 2003, with no overtime.

In late October or early November of 2003, the Troopers became ill. On November 7, 2003, both Troopers were treated at the Jersey Shore Hospital and were diagnosed with Hepatitis A. Over 500 other people contracted Hepatitis A after eating at the same Chi Chi's. Trooper Davy was unable to work from November 7, 2003, through February 16, 2004. He returned to limited duty on February 17, 2004, and to full duty on May 1, 2004. Trooper Loffredo was ill and could not work from November 7, 2003, through November 23, 2003. He returned to full duty on November 24, 2003. The Troopers both filed

---

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638.

claims for benefits under the Workers' Compensation Act[2] and the Act. The Troopers received workers' compensation benefits.

By correspondence dated February 2, 2004, the Police notified the Troopers that their claims for benefits under the Act were denied. Each Trooper appealed and requested an administrative hearing which was consolidated for both Troopers and was held on June 3, 2004. The issue before the arbitrator was whether the Troopers were injured in the performance of their duties. Trooper Davy testified regarding the events of October 6, 2003. He explained that his sergeant did not want to pay any overtime for the surveillance, so he and Trooper Loffredo agreed that they would list 8:00 a.m. to 4:00 p.m. on their timesheets and not claim any overtime. Notes of Testimony, June 3, 2004, (N.T.) at 11; Reproduced Record (R.R.) at 13a. Trooper Davy explained that they went back to continue surveillance after dinner even after conducting it that morning because they wanted to know when the residents would be home. N.T. at 11–12; R.R. at 13a–14a. Trooper Davy explained that it was necessary to stay overnight in Beaver because it was a three to three and one-half hour trip between Beaver and his home barracks. N.T. at 16; R.R. at 18a.[3]

In the proposed report of the arbitrator, dated August 23, 2004, the arbitrator recommended that the Troopers be declared ineligible for benefits under the Act because they were injured consuming meals and were not engaged in an obligatory task, conduct, service or function of a State Police Officer. The Troopers filed exceptions to the proposed report.

On October 15, 2004, the Commissioner denied the Troopers' claims for benefits. The Commissioner determined:

> In this case, Troopers [sic] Davy and Troopers [sic] Loffredo were not injured in performance of their duties; they were injured eating dinner at a restaurant of their choice while they were not working.... Since they were in overnight travel status, the troopers were entitled to be reimbursed for their meals ...; however, they had no professional duty to eat and they were certainly not obligated to eat at Chi–Chi's restaurant.
>
> It is truly unfortunate that Trooper Davy and Trooper Loffredo contracted Hepatitis A, but it is a misfortune shared by hundreds of other people who ate at the same restaurant. As with the other victims of the outbreak, the troopers' decision to have dinner at Chi–Chi's was a personal choice; it was not an obligatory task, conduct, service or function that arose from the troopers' positions as members of the State Police. Consequently, neither trooper is entitled to receive Heart and Lung Act benefits. (Footnote and citation omitted).

Commissioner's Adjudication, October 15, 2004, at 6.

■■■ The Troopers contend that they were injured in the performance of their duties when they contracted Hepatitis A as a result of a meal eaten in a restaurant during a four day investigation which took place approximately three and one-half hours from the Troopers' home station and which required the Troopers to stay in a

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

**3.** Judy Waterson, human resource analyst 1 for the Police, testified that she was responsible for making the determination as to wheth-

er an individual is entitled to benefits under the Act and that it is a separate determination from whether an individual is entitled to workers' compensation benefits.

hotel and eat their meals in restaurants in order to complete their mission.[4]

Section 1(a) of the Act, 53 P.S. § 637(a), provides in pertinent part:

Any member of the State Police Force ... who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the Commonwealth of Pennsylvania ... his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased.

In *McLaughlin v. Pennsylvania State Police*, 742 A.2d 254 (Pa.Cmwlth.1999), this Court addressed the issue of what constituted the "performance of his duties" when the Court faced the issue whether a state police officer was eligible for benefits under the Act. On March 30, 1998, Thomas V. McLaughlin (Officer McLaughlin) of the Police was scheduled to work eight continuous paid hours with no specifically assigned lunch period. Officer McLaughlin stopped at a restaurant for lunch and placed a radio call to the station to notify it that he was stopping for lunch. The station could reach him while he was inside because he had a patrol radio on his person. Under the Police Field Regulation 1–2.27, Officer McLaughlin was entitled to suspend his patrol or other assigned activity and stop to eat one meal for no longer than thirty minutes during the course of his shift. After eating, Officer McLaughlin left the restaurant to return to his patrol car. As he approached his patrol car, he fell and broke his arm. Because of this injury, Officer McLaughlin could not work until May 18, 1998. *McLaughlin*, 742 A.2d at 255.

Officer McLaughlin's application for benefits under the Act was denied. After his administrative hearing the arbitrator recommended that Officer McLaughlin be found eligible for benefits. The Commissioner ruled that Officer McLaughlin was not entitled to benefits because his injury did not occur in the performance of his duties. Officer McLaughlin petitioned for review with this Court. *McLaughlin*, 742 A.2d at 255.

This Court reversed. This Court reviewed the Act and noted that the phrase "performance of his duties" was not defined in the Act. After a review of the case law, this Court determined that "the dispositive inquiry to determine if an officer was injured in the performance of his duties is whether the officer was engaging in an obligatory task, conduct, service, or function that arose from his or her position **as a State Police officer** as a result of which an injury occurred, irrespective of whether the officer was on duty at the time." (Emphasis in original). *McLaughlin*, 742 A.2d at 257.

With respect to Officer McLaughlin, this Court determined:

McLaughlin testified that he had finished eating his lunch.... The significance of this fact is that according to FR 1–2.27 members who are on continuous duty shall be permitted to suspend patrol or other assigned activity for the purpose of consuming one meal 'during their tour of duty ... but only for such period of time as is reasonable or **necessary** and not to exceed thirty minutes.' ... Thus the period of time which was necessary for consuming that one meal was over and thus pursuant to the language of FR 1–2.27, so was the suspen-

---

**4.** This Court's review is limited to a determination of whether necessary findings of fact are supported by substantial evidence, constitutional rights were violated, or an error of law was committed. *Brandt v. Pennsylvania State Police*, 159 Pa.Cmwlth. 66, 632 A.2d 986 (1993), *petition for allowance of appeal denied*, 537 Pa. 668, 644 A.2d 1204 (1994).

sion of McLaughlin's patrol. As he testified, he was supervising the patrols and was going back out on the road to do so.... As the period of suspension of his assigned activity was over, he was duty bound to return to his patrolling. Having finished his lunch, his patrol was no longer suspended and he had an obligation as a police officer to resume that patrol. In attempting to perform this duty, he, of necessity, had to go to and reenter his patrol car. In attempting to do so, he tripped and injured himself. Hence, McLaughlin did not injure himself while at lunch as the PSP [Police] erroneously contend; rather, he injured himself in attempting to fulfill his duty to go back out on patrol after having completed his lunch. Thus, the Commissioner erred in concluding that McLaughlin was not entitled to benefits under the Act. As McLaughlin sustained injuries in the performance of his duty in his capacity as a police officer to go out on patrol, he is entitled to benefits pursuant to the Act. (Emphasis in original. Citation omitted).

*McLaughlin,* 742 A.2d at 259.

Here, the Troopers were engaged in a surveillance operation approximately three hours distance from their home barracks. On the day in which the Troopers contracted Hepatitis A, they conducted surveillance between 5:00 and 9:00 a.m. approximately, and then returned to their hotel and slept for a few hours. The Troopers then met with Sergeant Dan Magar of the Beaver Borough Police Department to inform him that they were conducting surveillance in the area. The Troopers returned to the hotel and worked out in the gym. At approximately 5:00 p.m., the Troopers went to Chi Chi's and, unwittingly, contracted Hepatitis A. After dinner, the Troopers conducted surveillance for approximately one hour.

As in *McLaughlin,* the key question is whether the Troopers were injured in the performance of their duties because they were engaged in an obligatory task, conduct, service, or function that arose from their positions as Police officers. The Troopers argue that because the assignment was located so far from their home station they had no downtime and the only reason they were in Beaver and at the restaurant was so that they could continue to perform their duties. For support, the Troopers assert that because they were reimbursed for their meals under the Police's Field Regulations, eating in a restaurant was an activity that the Police expected so that they could perform their mission.

While the Police provide reimbursement for meals and lodging for Troopers on assignment more than one and one-half hours from home, this Court cannot accept the Troopers' contention that any meal consumed while on assignment away from home is an obligatory task, conduct, service, or function that arose from their positions as Police officers. The Troopers had no obligation or duty to eat at that particular restaurant or to eat at any restaurant on this assignment. Under the Troopers' theory, any injury that occurred while a trooper was on assignment away from home would qualify for benefits under the Act because absent the assignment, the trooper would not be where the injury occurred.

Notably, in *McLaughlin,* Officer McLaughlin had finished his meal and was returning to duty when he was injured. Officer McLaughlin was eligible to consume a meal during his shift. However, this Court determined that while he was eating, his patrol was suspended. Because he was injured as he returned to duty, this Court determined that he was eligible for benefits. This Court indicated that the

Commissioner erroneously concluded that Officer McLaughlin was at lunch when he was injured. This Court implied that had Officer McLaughlin been injured while he eating, he would not have been eligible for benefits. Similarly, this Court cannot accept that the Troopers were in the performance of their duties when they were eating dinner while on an overnight assignment. The Commissioner determined that the Troopers were not engaged in an obligatory task, conduct, service, or function that arose from their positions as Police officers because they were injured while eating dinner at a restaurant of their choice. This Court agrees.

Accordingly, we affirm.

### ORDER

AND NOW, this 10th day of June, 2005, the order of the Pennsylvania State Police Commissioner in the above-captioned matter is affirmed.

FLAHERTY, Senior Judge, files dissenting opinion.

DISSENTING OPINION BY Senior Judge FLAHERTY.

I respectfully dissent. The majority distinguishes the *McLaughlin* case where the Trooper was compensated because he had finished eating and had left the restaurant when he tripped on the way to the patrol car in the parking lot and injured himself. The dispositive inquiry in *McLaughlin* was whether the police officer was engaged in an obligatory task. In this case, the Troopers were a three hour drive away from their home station conducting surveillance in a homicide investigation. As such, it was obligatory for the Troopers to eat their meals in restaurants away from their station or go hungry. I believe that the Troopers were injured in the performance of their duties because, without adequate nutrition from these meals, it would be difficult for some Troopers to concentrate on the performance of their surveillance duties and unprofessional to ask them to forego meals. Therefore, the Troopers had an obligation to obtain adequate nutrition to perform their duties and, as such, the injury suffered here in the process of getting that nutrition in the performance of those duties would be compensable. Accordingly, I would hold that the Hepatitis A that the Troopers contracted after eating a meal at Chi Chi's is an injury for which they are eligible for benefits under the Heart and Lung Act.

Furthermore, I note that Trooper Davy Testified that his sergeant asked the Troopers to avoid overtime charges by filling out their time sheets to indicate that they only worked from 8:00 AM until 4:00 PM despite it being required of the Troopers to work overtime on the surveillance after 4:00 PM. However, the Troopers testified that they went to dinner at 5:00 PM and, after dinner, they conducted surveillance for approximately one hour. I find such conduct by the State Police to be a direct order to perform duties after 4:00 PM although in a circumspect fashion because the Troopers were directed to misrepresent their time by a superior officer. This direction to misrepresent does, however, bring the Troopers' conduct and their subsequent injury within the ambit of the performance of duty because of the emphasis placed upon the time period involved if nothing else. The State Police should be role models for the citizens of Pennsylvania and should not request that their Troopers inaccurately report the amount of time that they have worked. It is also shameful for the State Police to ask the Troopers to misrepresent their hours on their time sheet and then attempt to use that misrepresentation to bolster their argument that the Troopers' injuries were not work-related because those injuries oc-

curred after the time the time sheet indicates that the Troopers stopped working.

Accordingly, I would reverse the order of the State Police Commissioner.