**PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION (Lawrence Hogan), Petitioner**

**v.**

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 23, 2014.

Decided July 15, 2014.

Ian J. Blynn, Harrisburg, for petitioner.

Julie R. Tilghman, Assistant Counsel, Mechanicsburg, for respondent.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge JAMES GARDNER COLINS.

Pennsylvania State Corrections Officers Association (PSCOA) petitions this Court for review of the February 7, 2014 arbitration award (Award) denying Lawrence Hogan's (Claimant) petition for benefits under what is commonly known as the Heart and Lung Act (HLA).[1] For the reasons set forth below, we affirm.

Claimant was employed with the Department of Corrections (DOC) as a Corrections Officer (CO) at the State Correctional Institution at Graterford (SCI–Graterford). On January 22, 2012, Claimant had reached the end of his 10 p.m. to 6 a.m. shift, during which he had been assigned to tower four; COs assigned to tower watch duty are locked into the tower and must be unlocked in order to leave. He was relieved by Officer Atherholt, who unlocked the tower and offered to drive Claimant to his car, which Claimant had parked in a small area on SCI–Graterford grounds between tower four and tower five. (Transcript of March 29, 2012 HLA Arbitration Hearing (H.T.) at 16–17, Reproduced Record (R.R.) at 7a; Arbitration Opinion and Award (Award), Findings of Fact (F.F.) ¶¶ 3–5.) Claimant was dropped off at his vehicle prior to clocking out from his work shift or returning his paperwork, key or equipment; he gave the tower key to Officer Atherholt to be returned to the front gate. (F.F. ¶¶ 6–7.) Prior to getting into his car, Claimant stepped onto uneven pavement, turned his ankle, and fell to the ground. (F.F. ¶ 8.) Claimant then drove his car to the main entrance of SCI–Graterford, reported his injury to the shift commander, and was examined by the dispensary nurse; he was then driven to the hospital. (F.F. ¶¶ 9–10.) Claimant received a diagnosis on January 23, 2012 of an ankle sprain and was provided further medical treatment by various physicians over the ensuing months; he made two separate, unsuccessful attempts to return to light duty, and was unable to work until July 7, 2012. (F.F. ¶¶ 11–21.)

After Claimant's petition for HLA benefits was denied by DOC, PSCOA appealed on Claimant's behalf. A hearing was held before an arbitrator, who entered the Award denying HLA benefits after he found that Claimant's actions, which resulted in his ankle injury, were not "in the performance of duty" as required by HLA.[2] PSCOA appealed the Award to this Court.

In the Award, the arbitrator noted that since the HLA does not include a specific definition of what constitutes the "performance of duty," he was required to look to this Court for guidance regarding its meaning. The arbitrator stated:

In *Mitchell v. [Pennsylvania State Police]*, 727 A.2d 1196 (Pa.Cmwlth.[1999]) the [C]ourt reviewed whether actions done, with supervisory permission, during a work shift, are in the performance of duty when they are solely for the

---

1. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–38.

2. Section 1(a) of the HLA provides:
   Any ... correction employes employed by the Department of Corrections, whose principal duty is the care, custody and control of inmates, ... **who is injured in the performance of his duties** ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the Commonwealth of Pennsylvania ... his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased.
   53 P.S. § 637(a) (emphasis added). The language of the HLA is to be strictly construed. *Colyer v. Pennsylvania State Police*, 165 Pa. Cmwlth. 41, 644 A.2d 230 (1994).

convenience of the employee. In *Mitchell*, a Pennsylvania State Police officer, while still on duty, and having obtained his supervisor's permission, went out to the parking lot to warm up his car prior to the end of his shift in order to avoid driving home in a cold vehicle. While in the parking lot, Officer Mitchell slipped on ice, injuring his knee. Resultantly, Mitchell requested Heart and Lung benefits for the period of his recovery. The Commonwealth Court found that Mitchell's act was one of personal convenience and had no connection to his obligations as a State Police Officer. The Court rejected Mitchell's contention that his actions were similar to "eating meals" or "using the restroom" while on duty, which are compensable under the Act. Those activities, unlike those of Mitchell, are necessary functions that every state police officer must perform during the course of his shift ...

(Award at 9.) The arbitrator further discussed this Court's decision in *McLaughlin v. Pennsylvania State Police*, 742 A.2d 254 (Pa.Cmwlth.1999), wherein we addressed the issue of what constituted the "performance of duties" for a police officer who was injured as he returned to his patrol car after stopping at a restaurant for a meal. In *McLaughlin*, this Court reversed a denial of benefits where the officer had finished his lunch while on a continuous eight-hour shift, and was returning to his vehicle to resume his patrol when he tripped and broke his arm. 742 A.2d at 255. In *McLaughlin*, this Court

determined that "the dispositive inquiry to determine if an officer was injured in the performance of his duties is whether the officer was engaging in an obligatory task, conduct, service, or function that arose from his or her position as a State Police officer as a result of which an injury occurred, irrespective of whether the officer was on duty at the time." *Id.* at 257. *See also Davy v. Pennsylvania State Police*, 875 A.2d 1233 (Pa.Cmwlth.), *appeal denied*, 586 Pa. 716, 889 A.2d 1218 (2005). The arbitrator here concluded that Claimant was not performing an obligatory task, conduct or function that was specifically part of his position when his injury occurred but rather, he "was engaged in an act of personal convenience, going to his car parked near his tower assignment and not in the employee parking lot." (Award, Conclusions of Law ¶ 5.)[3] In finding that Claimant's actions were not in the performance of duty as required by HLA, the arbitrator characterized Claimant as standing in the same place as the police officer in *Mitchell*, who was injured when he went outside during his shift to warm up his car.

■ Our standard of review in reviewing the arbitrator's decision is the deferential essence test. In *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405, 413 (1999), our Supreme Court stated:

3. During the arbitration hearing, testimony was elicited by DOC from a supervising lieutenant at SCI–Graterford as to the assigned parking area for employees, to establish that Claimant violated policy by parking adjacent to tower four instead of parking in the assigned lot located in the front of the facility. (H.T. at 63–64, R.R. at 19a.) The supervising lieutenant further stated that once relieved from tower four, Claimant should have been

driven to the main entrance control center to turn in his equipment and clock out. (*Id.*) However, the arbitrator noted in the Award that DOC was aware of the practice of COs parking near the tower to which they were assigned and did nothing to stop it, and even if Claimant had not been violating a work rule, or had specific permission to park near the tower, he was still ineligible for HLA benefits. (Award at 10.)

The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.

The Supreme Court opined that given the great deference to be accorded the arbitrator's decision, in the vast majority of cases the arbitrator's award will be final and binding upon the parties, except where the award "indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Id.*

▆ Before this Court, PSCOA argues that the arbitrator's conclusions are contrary to law and outside the confines of the collective bargaining agreement, which grants authority to its arbitrators to decide all issues and requires that their decisions are guided by judicial opinions interpreting the HLA. (CBA, Appendix I, Article II, Sections 2(a) and 2(b), R.R. at 118a.) PSCOA submits *sub judice* that our decision in *McLaughlin* mandates a finding that Claimant was in the performance of his duties when he was injured; that is, that he was required by DOC to go from his assigned tower to the entrance to SCI–Graterford in order to clock out for the day, and his injury occurred on the way to completing this assigned task. PSCOA argues that the fact that Claimant was making "a slight detour—while remaining on prison grounds—in order to pick up his car and drive to the front gate" was a minor deviation, or inconsequential departure from his job of the sort which our Court has ruled does not disqualify him from benefits.

We find here that the arbitrator's award was not outside the confines of the collective bargaining agreement. The arbitrator provided a thoughtful analysis of the cases in which this Court has interpreted the phrase "injured in the performance of duty." The arbitrator's conclusion that Claimant was not engaged in the performance of his duties when he injured his ankle was thus clearly guided by judicial opinions and as such, was within the confines of the collective bargaining agreement. Indeed, the Court in *McLaughlin* distinguished the circumstances there, where the police officer injured himself in attempting to fulfill his duty to go back out on patrol after he had completed his lunch, from those present in *Mitchell*, stating "[w]e reasoned [in *Mitchell*] that because Mitchell had no police duty to go out and warm up his car, i.e., he was under no official obligation to warm up his personal car, he was in fact deviating from those [police] duties to perform a personal mission ..." *McLaughlin*, 742 A.2d at 256 (quoting *Mitchell*, 727 A.2d at 1198) (quotations omitted.)

Claimant asserts that he was on his way from guard tower four to the prison front gate in order to clock out of work when he was injured. However, Claimant was under no obligation to drive his personal vehicle to the main gate to clock out. Further, the arbitrator determined that it was not at all clear that Claimant intended to drive to the main gate to clock out, finding specifically that Claimant gave the tower key to Officer Atherholt to be returned to the front gate prior to the injury. (F.F. § 7.) The arbitrator found that after the injury occurred, Claimant "managed to get into his car and drove to the main entrance

to the prison and he reported the injury ... and was examined by the dispensary nurse ...," and Claimant testified that he did not clock out from work that day.[4] (F.F. 9; H.T. at 44, R.R. at 14a.)

Accordingly, we find no error in the arbitrator's conclusion that Claimant's actions, which resulted in his ankle injury, were not "in the performance of duty" as required by the HLA. The arbitrator's award is affirmed.

## ORDER

AND NOW, this 15th day of July, 2014, the arbitration award in the above-captioned matter is hereby AFFIRMED.

4. The fact that he had not clocked out does not require a finding that Claimant was still on duty. The SCI–Graterford lieutenant testified that if an employee does not clock out at the end of a shift, he is considered to be "off-duty" at the moment the scheduled shift ends. (H.T. at 65–66, R.R at 19a–20a.)