Gerald W. ALLEN, Petitioner,

v.

PENNSYLVANIA STATE POLICE,
Respondent.

Commonwealth Court of Pennsylvania.

Argued April 19, 1996.
Decided June 28, 1996.

James L. McAneny, for Petitioner.

Michael C. Barrett, Assistant Counsel, for Respondent.

Before DOYLE and KELLEY, JJ., and KELTON, Senior Judge.

DOYLE, Judge.

Gerald W. Allen (Claimant) appeals from an order of the Commissioner of the Pennsylvania State Police (Commissioner), denying his claim for benefits under the Heart and Lung Act (the Act).[1] We affirm.

Claimant is a State Police Officer assigned to Troop S in York, Pennsylvania, and on July 10, 1994, he was scheduled to work the 3:00 p.m. to 11:00 p.m. shift. He arrived early for work and changed into his uniform in a locker room located in the State Police facility. State Police Officers are not required to arrive at work before their shift or use the locker room, but it is a common practice for them to do so. At approximately 2:55 p.m., five minutes before the start of his shift, Claimant attempted to dry his hands on the paper towels in a dispenser fixed to the wall of the locker room. Unfortunately, the cover on the towel dispenser inexplicably popped open, and as a result, Claimant cut and injured his hand on the metal corner of the towel dispenser. Because of this injury, Claimant was unable to work from July 11

1. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–38.

through July 17, 1994, and from July 20 through July 24, 1994.[2]

Thereafter, Claimant applied for Heart and Lung benefits under Section 1(a) of the Act,[3] but the Pennsylvania State Police (PSP) denied his claim. Claimant appealed that decision and a hearing was conducted by an arbitrator. The arbitrator issued a proposed report and recommendation, which concluded that Claimant was not entitled to Heart and Lung benefits, because Claimant was not injured in the performance of his duties as a police officer. In the arbitrator's view, Claimant was injured in the normal process of getting *ready* for work and not in the course of his actual police duties; the act of washing his hands and reaching for a paper towel, occurring prior to his shift, was not done for the benefit of the PSP. Claimant filed exceptions to the arbitrator's report with the Commissioner. The Commissioner adopted the findings of fact and conclusions of law of the arbitrator, and accordingly, denied Claimant benefits. This appeal followed.

■ The sole issue for our review is whether a State Police Officer, who arrived early at the police station and was injured while preparing for his regularly scheduled shift, was injured in the performance of his duties for purposes of the Act?

The Act provides full compensation to State Police Officers, and other public service personnel, for temporary disabilities incurred "in the performance of [their] duties." Section 1(a) of the Act, 53 P.S. § 637(a). This specific language was recently interpreted by this Court in *Colyer v. Pennsylvania State Police*, 165 Pa.Cmwlth. 41, 644 A.2d 230 (1994) and *McCommons v. Pennsylvania State Police*, 165 Pa.Cmwlth. 280, 645 A.2d 333, *petition for allowance of appeal denied*, 539 Pa. 671, 652 A.2d 841 (1994).

In *McCommons,* a state police officer was injured in a car accident while driving to a meeting for the Pennsylvania State Troopers Association. The officer argued that since the union meeting was authorized under the Association's collective bargaining agreement, and the PSP had granted him leave to attend the meeting, his injuries were covered under the Act. We disagreed. Although attending the meeting was an obligation of the officer as an official in the Association, we rejected his claim since he failed to demonstrate that his "attendance [at the union meeting] constitute[d] performance of a *police duty." McCommons,* 645 A.2d at 336 (emphasis added).

However, in *Colyer,* we reached a different conclusion. In that case, an officer was hospitalized for depression after being investigated for allegedly *manufacturing and/or planting evidence*. While ostensibly the investigation, which was found to have caused his depression, fell outside his duties as a police officer, we held that the officer was entitled to benefits under the Act since he had a duty to assist and cooperate with the investigation. In reaching that decision, we specifically rejected the PSP's contention that Heart and Lung Act benefits are only available when an officer is injured in the performance of a *hazardous* duty.

■ Nonetheless, while granting benefits under the unique set of facts presented in *Colyer,* we recognized that the language contained in Section 1(a) of the Act has a more narrow focus than similar provisions in the Workers' Compensation Act.[4] While the Workers' Compensation Act permits recovery for injuries "arising in the course of [one's] employment and related thereto,"[5] the Heart and Lung Act is strictly limited, permitting recovery only for injuries incurred "in the *performance of [one's] duties."* [6] Section 1 of the Act, 53 P.S.

---

2. Claimant also missed his scheduled shift for the day he was injured, July 10, 1994.

3. 53 P.S. § 637(a).

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

5. Section 301(c) of the Worker's Compensation Act, 77 P.S. § 411(1).

6. We recognize that under Section 1(b) of the Act, diseases of the heart and tuberculosis "arising directly out of the employment" of an officer are compensable. Section 1(b) of the Act, 53 P.S. § 637(b). Although the language of Section 1(b) of the Act is broader and more analogous to the Workers' Compensation Act than Section 1(a) of the Act, we do not need to determine the exact parameters of coverage provided by Section 1(b)

§ 637(a) (emphasis added); *see Colyer*, 644 A.2d at 233 ("Upon examining the differences between the Worker's Compensation Act and the Heart and Lung Act, and noting the legislature's deliberate use of different language in Sections 1(a) and 1(b) of the Act, we hold that the standard of work-relation set forth in the Worker's Compensation Act is not applicable in this case."). Therefore, although the Act grants full compensation and continuation of employee benefits to eligible employees, and thus in one sense is more generous towards injured employees than the Workers' Compensation Act, its scope is in fact much narrower.[7] And, of course, benefits under the Workers' Compensation Act are an entirely separate issue. Moreover, while the provisions of the Workers' Compensation Act should be liberally construed, *see Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981), we expressly stated in *Colyer* and *McCommons* that the language of the Heart and Lung Act must be strictly construed pursuant to Section 1928(b)(8) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(8). *See Colyer; McCommons.*

Claimant and the PSP both acknowledge that the present case does not fall squarely under either our holding in *Colyer* or our holding in *McCommons*, but "somewhere in between." Nonetheless, Claimant believes that we should expand our holding in *Colyer* and hold, as a matter of law, that Claimant's injury was sustained in the "performance of his duties."[8] Claimant, despite the fact that his injury occurred prior to the beginning of his shift, maintains that his injury was sufficiently related to his duties as a State Police Officer to entitle him to benefits under the Act. Claimant relies on the fact that he is required to be fully dressed, and properly groomed, at the beginning of his shift. Accordingly, he asserts, his actions in the locker room prior to the beginning of his shift were

necessary to fulfill his duty. He further argues that by providing the locker room for its officers, the PSP derives the benefit of having officers available not only for their regular shifts, but for emergency situations as well. Therefore, unlike in *McCommons*, the PSP was itself deriving a benefit from his actions.

Although Claimant makes a cogent and well-reasoned argument, we must ultimately reject his claim based on the principles of strict statutory construction which apply to the Act. *See Colyer; McCommons.* We must agree with the PSP that preparing for work, no matter how close chronologically to the beginning of one's shift, is not the same thing as performing one's duty. In the present case, we realize that the demarcation between preparing for duty and actually being on duty is somewhat tenuous. Nonetheless, based on a strict interpretation of the word "duty," we find that Claimant's actions in the present case do not fall within the parameters of that term for the purposes of the Act. *See Colyer; McCommons.*

The fact that Claimant's use of the locker room benefited the PSP, or that it was encouraged, does not change our judgment. State Police Officers do many things everyday which enable them to perform their duty, and which incidentally benefit the PSP. For example, an officer who lifts weights in a gym or practices his marksmanship at a private firing range in his spare time is improving himself as an officer. Such conduct enables him to better meet the physical and skill requirements of his position as a State Police Officer. However, no matter how much these types of activities might incidentally benefit the PSP, they simply do not constitute, in and of themselves, a part of the officer's duty.

Furthermore, we do not believe a different conclusion is warranted just because the inju-

---

at this time since Claimant's injury in this case is a hand injury, covered by Section 1(a), and not Section 1(b), of the Act.

7. In addition, unlike workers' compensation benefits, Heart and Lung Act benefits are only available for temporary disabilities, not permanent disabilities. *Colyer; McCommons; Brandt v. Pennsylvania State Police*, 159 Pa.Cmwlth. 66,

632 A.2d 986 (1993), *petition for allowance of appeal denied*, 537 Pa. 668, 644 A.2d 1204 (1994).

8. Conversely, the PSP argues that the present case is distinguishable from *Colyer* and that we should strictly limit our decision in *Colyer* to the facts of that case.

ry to Claimant in this case occurred on the PSP's own premises. Unlike coverage under the Workers' Compensation Act,[9] the site of the injury is completely irrelevant when determining an officer's entitlement to Heart and Lung Act benefits; the sole question to be considered under the Act is whether the officer was engaged in the "performance of his duties." *Colyer; McCommons.* Whether an officer injures himself washing his hands at the station immediately before his shift, or injures himself in the privacy of his own home doing exactly the same thing, such activity does not constitute part of an officer's duty under the Act.[10]

Accordingly, for the reasons enumerated above, the order of the Commissioner is affirmed.

## ORDER

NOW, June 28, 1996, the order of the Commissioner of the Pennsylvania State Police in the above-captioned matter is hereby affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent and would award claimant benefits pursuant to the Heart and Lung Act. I recognize that the language of the Heart and Lung Act is to be strictly construed. *Colyer.* In addition, I agree with the majority's reasoning that claims based on an officer being injured at home or another location while preparing to go to work should be rejected. However, based on the facts of this particular case, I believe the majority's restriction of the Heart and Lung Act goes too far.

The distinguishing factor herein is that it is common practice for police officers to use the locker room, located on PSP premises, prior to beginning a work shift. Moreover, the injury suffered by claimant to his hand happened after he had changed into his uniform in the locker area and only five minutes before the start of his shift.

The resulting injury to claimant's hand was clearly temporary. Therefore, in this case, I would reverse the Commissioner's order and award benefits pursuant to the Heart and Lung Act.

---

**9.** Section 301(c) of the Workers' Compensation Act, 77 P.S. § 411(1), provides that an employee whose injury is caused by the condition of the employer's premises, and where the employee is required to be on the premises, is entitled to receive benefits even if he was not actually engaged in activities furthering the employer's business at the time of his injury. *See Workmen's Compensation Appeal Board v. United States Steel Corp.,* 31 Pa.Cmwlth. 329, 376 A.2d 271 (1977) (worker killed in employer's parking lot before work due to epileptic seizure granted benefits); *see also Thomas Jefferson University Hospital v. Workmen's Compensation Appeal Board (Cattalo),* 144 Pa.Cmwlth.302, 601 A.2d 476 (1991) (employee awarded benefits where he was injured on employer's premises fifteen minutes before beginning of shift); *Good Shepherd Workshop v. Workmen's Compensation Appeal Board (Caffrey),* 124 Pa.Cmwlth.262, 555 A.2d 1374 (1989) (employee who injured head on floor of employer's premises after allegedly suffering seizure granted benefits).

**10.** If we were to hold otherwise in this case, one could logically argue that an officer injured at home while preparing to go to work would also be entitled to benefits whether he was injured washing his hands, taking a shower, or even making a sandwich to be eaten while on duty. Absent a clear intention by the legislature to include such activities within the definition of duty under the Act, we cannot depart from the strict interpretation of that term as mandated by the Statutory Construction Act of 1972 and our own prior decisions.