**William E. LEE, Jr., Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided Feb. 10, 1998.

James L. McAneny, Harrisburg, for petitioner.

Joanna N. Reynolds, Harrisburg, for respondent.

Before DOYLE and LEADBETTER, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

William E. Lee, Jr. (Claimant) appeals from an order of the Commissioner of the Pennsylvania State Police (Commissioner), denying his claim for benefits under the Heart and Lung Act (Act).[1] The facts underlying the appeal follow.

Claimant is a member of the Pennsylvania State Police (PSP) assigned to Troop F, Milton Barracks. On December 22, 1994, at approximately 7:40 a.m., Claimant suffered neck and back injuries in an automobile accident which occurred when he was returning to work from a "double-back" shift.[2] At the time of the accident, Claimant was driving an unmarked PSP vehicle, which he was permitted to use to return to his second eight-hour shift. As a result of the accident, Claimant applied for Heart and Lung Benefits pursuant to Section 1(a) of the Act, 53 P.S. § 637(a), but, on February 10, 1995, the PSP denied his claim. Claimant appealed this decision, and a hearing was conducted before an arbitrator.

At the hearing, on February 21, 1996, Claimant testified concerning the accident, as well as the PSP's policy of permitting officers who are returning to their second shift to use PSP vehicles rather than their personal vehicles. Specifically Claimant stated that, when using a PSP vehicle to return to work, an officer is required to look for traffic violations and take action when appropriate, be in full uniform, and monitor the police radio. Finally, Claimant testified that an officer is not considered to be in "10–8" status, indicating that an officer has begun his shift, until he either reaches the PSP parking lot or the barracks. Claimant testified that he was not in 10–8 status at the time of the accident.

On November 7, 1996, the arbitrator issued a proposed report and recommendation in which he concluded that Claimant was eligible for benefits under the Act. The arbitrator based this conclusion on the fact that Claimant was driving a police vehicle, monitoring the police radio, and **was required to be alert to things which *could* give rise to police action.** Accordingly, the arbitrator concluded that Claimant's action encompassed the performance of his duties. However, on March 10, 1997, the Commissioner, although adopting the arbitrator's findings of

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–38.

2. A "double-back" shift refers to a shift were the trooper works one eight-hour shift, then has eight or nine hours off before returning to work another eight-hour shift.

fact, issued a decision rejecting the arbitrator's conclusion that Claimant was eligible for Heart and Lung benefits because the Commissioner concluded that Claimant was merely commuting to work and, therefore, was not engaged in police duties when he was injured. This appeal followed.

On appeal to this Court,[3] Claimant argues that the Commissioner erred in reaching the conclusion that he was not injured "in the performance of his duties." Specifically, Claimant argues that, because he was en route to his regularly-scheduled shift while in full uniform, driving a PSP vehicle, and was required to monitor the police radio and be alert for any situation requiring police action, he was performing his duties within the meaning of the Act.

Section 1(a) of the Act provides for full compensation to be paid to State Police Officers, as well as other specifically-identified public service employees, who sustain temporary disabilities during the performance of their duties. Specifically, the Act provides as follows:

> Any member of the State Police Force ... **who is injured in the performance of his duties** ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the Commonwealth of Pennsylvania ... his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased.

Section 1(a) of the Act, 53 P.S. § 637 (emphasis added). We have previously held that the statutory interpretation of the phrase "performance of duties" is neither limited to the performance of hazardous duties nor is it as liberal as the liberal interpretation of the phrase "course and scope of employment" contained in the Workers' Compensation Act.[4] *Colyer v. Pennsylvania State Police*, 165 Pa.Cmwlth. 41, 644 A.2d 230 (1994). We have further held that the Act itself is to be strictly construed pursuant to Section

1928(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b). *Colyer.*

In *McCommons v. Pennsylvania State Police*, 165 Pa.Cmwlth. 280, 645 A.2d 333, *petition for allowance of appeal denied*, 539 Pa. 671, 652 A.2d 841 (1994), the claimant was injured while driving to a meeting of the Pennsylvania State Troopers Association. McCommons argued that, because he was given leave to attend the meetings and the union was authorized under the Association's collective bargaining agreement, his traveling to reach the meeting was in the performance of his duties. We rejected this argument and denied the claimant benefits because we concluded that participation in the activities of the Association or one of its committees is not a duty assigned to a policeman in his capacity as a law enforcement officer.

Likewise, in *Allen v. Pennsylvania State Police*, 678 A.2d 436 (Pa.Cmwlth.1996), *petition for allowance of appeal denied*, 546 Pa. 696, 687 A.2d 379 (1997), we concluded that an officer who injured his hand on a towel dispenser in a State Police locker room while preparing to begin his shift was not injured "in the performance of his duties." We noted that to hold otherwise would permit the award of benefits in an analogous case where the officer was injured at home performing a similar task in preparation for his shift. We concluded that this type of injury was outside of the intent of the General Assembly in adopting the Heart and Lung Act.

Conversely, in *Colyer*, we granted Heart and Lung benefits to a State Police Officer who was hospitalized for depression as the result of an official investigation which focussed on whether Colyer had manufactured evidence in a particular case. We concluded that, although the investigation by the PSP was outside of Colyer's duties as a police officer, Colyer was obligated to cooperate with the investigation as an officer. There-

---

**3.** Our standard of review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Brandt v. Pennsylvania State Police*, 159 Pa.Cmwlth. 66, 632 A.2d 986

(1993), *petition for allowance of appeal denied*, 537 Pa. 668, 644 A.2d 1204 (1994).

**4.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4.

fore, he was performing a police function when he was injured.[5]

■ The principle which we distill from these cases is that, in order for a claimant to be injured "during the performance of his duties," he must be injured as a result of an event which requires or triggers an official police response. In *Colyer,* the triggering event necessitating an official police response was the investigation in which Colyer was required to cooperate by virtue of his status as a police officer. As a result of his cooperation in the investigation, the claimant was injured. By contrast, in *McCommons* and *Allen,* this essential triggering event was absent because neither case involved a situation in which an officer was required to initiate police action. Trooper Allen was not required to prepare for his shift at the police barracks, nor was Trooper McCommons required as a State Police Officer to attend Police Association meetings, regardless of whether he was paid or given time off to do so.

■ In the present case, we conclude that a triggering event was absent from Claimant's commute to work on December 22, 1994. The record indicates that Claimant was not required to use a PSP vehicle to return to work. Rather, Claimant testified that the main reason for using the vehicle was an economic one, because Claimant could conserve fuel in his personal vehicle. Moreover, absent from the record is any indication that Claimant was summoned by the PSP or that he observed a violation of the law during his commute to work that day. His accident had nothing to do with police action, but was purely personal in nature, and our review of the record reveals nothing which required an official police response by Claimant. Therefore, we conclude that Claimant was not injured "in the performance of his duties."

In response, Claimant makes two arguments. First, Claimant argues that, because he was *available* to take police action in the unmarked patrol car, he was performing his police duties. However, we must disagree. Although we agree that Claimant was in a position to take police action if he witnessed a violation of the law or was summoned by the PSP, neither of these scenarios was present in the instant case; accordingly, we conclude that Claimant was not injured in the performance of his duties.

Second, Claimant asserts that the PSP receives a benefit from having additional officers out on the road prior to the beginning of their shift. This benefit, Claimant argues, is sufficient to consider his injuries as occurring in the performance of his duties. Again, we must disagree. In *Allen,* we noted that an officer who lifts weights or practices his marksmanship in his spare time will potentially improve his performance as a police officer. Of course, this improvement indirectly benefits the PSP because it makes that officer more proficient. However, we concluded that no matter what degree of benefit these types of activities confer on the PSP, they do not, without more, constitute performance of an individual's duties as a police officer. Similarly, in this case, although Claimant's presence on the road prior to the beginning of his scheduled shift indirectly benefits the PSP **if** something occurs which would require a police response, unless such an event would occur, simply being in a position to respond, by itself, does not constitute performance of Claimant's duties as a State Police Officer. In reaching this conclusion, however, we wish to make it clear that the principles which we articulate in this appeal are applicable to the injury of **an off-duty officer** and, of course, address only that factual circumstance. It is obvious that the statutory interpretation of the phrase "in-

---

**5.** Colyer had been assigned to the PSP's laboratory when he testified at a criminal trial regarding his assistance in the forensic examination of a murder victim, Susan Reinert, in 1979. As the result of that testimony, Colyer was investigated by PSP's Internal Affairs Division and by the Attorney General's office to determine if he had manufactured or planted evidence in the case or had conspired to do so. Although no evidence of any wrong-doing on Colyer's part was found, PSP investigators repeatedly questioned him, accused him of tampering with evidence, advised him of his constitutional rights, and informed him that he could be arrested. Colyer was hospitalized in November of 1988 and diagnosed as having acute major depression; for two years thereafter he needed psychiatric treatment and missed numerous days at work before retiring from the PSP on January 4, 1991.

jured in the performance of his [/her] duties" is an issue which is factually sensitive, and, because of that, the principles which we articulate today may not be apposite under other circumstances.

Order affirmed.

### ORDER

NOW, February 10, 1998, the order of the Commissioner of the Pennsylvania State Police in the above-captioned matter is hereby affirmed.