# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Corrections :
Officers Association (David Panfil), :
    Petitioner :
      :
   v.    : No. 1057 C.D. 2019
      : Submitted: May 12, 2020
Commonwealth of Pennsylvania, :
Department of Corrections, :
    Respondent :


BEFORE: HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge
    HONORABLE ELLEN CEISLER, Judge


OPINION BY JUDGE BROBSON   FILED:  July 1, 2020


   Pennsylvania State Corrections Officers Association (Association) petitions for review of an arbitration award dated July 12, 2019, denying a petition for benefits filed by the Association on behalf of David Panfil (Claimant) under what is commonly referred to as the Heart and Lung Act (HLA).[1]  For the reasons set forth below, we affirm the arbitration award.

   The facts underlying this matter are not in dispute.  The Commonwealth of Pennsylvania, Department of Corrections (Department), and the Association are parties to a collective bargaining agreement (CBA).  The CBA sets forth the terms and conditions of employment for the members of the bargaining unit, which includes, but is not limited to, those corrections officers employed by the Department

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638.

at the former State Correctional Institution at Graterford (SCI-Graterford).[2] Pursuant to Article 35, Section 3 of the CBA, the Association and the Department agreed that all disputes relative to a corrections officer's eligibility for benefits under the HLA, including a corrections officer's appeal from the Department's denial of HLA benefits, would be considered a grievance and resolved through binding arbitration. The Association and the Department further agreed that, in resolving such disputes, the arbitrator would be "bound by the judicial opinions" interpreting the HLA and would be "guided by[ the] prior decisions" of any arbitrator who has decided HLA cases between the Association and the Department. (CBA, App. I; Memo. of Understanding, Art. II, § 2(b)-(c).)

Claimant was a corrections officer at SCI-Graterford. On December 25, 2017, Claimant sustained an alleged injury to his low[er] back as he was climbing the stairs to the main entrance of SCI-Graterford. On that date, Claimant arrived at SCI-Graterford in uniform a few minutes before his scheduled shift. Claimant and another corrections officer were climbing the stairs to the main entrance of SCI-Graterford, approximately 20 feet from the main lobby where Claimant was required to clock in for his shift. As Claimant and the other corrections officer were climbing the stairs, the other corrections officer tripped, fell, and pitched forward. Claimant turned quickly to assist the other corrections officer, and, as he did so, Claimant allegedly experienced "severe pain" in his low[er] back. Although the stairs to the main entrance of SCI-Graterford are located outside of the prison facility, inmates are often present in that area, and, had there been an incident

---

[2] Since the time of Claimant's alleged injury, the Department closed SCI-Graterford and relocated all inmates and staff to the State Correctional Institution at Phoenix, a newly constructed prison facility located on the same property as SCI-Graterford. *See* https://www.cor.pa.gov/Facilities/StatePrisons/Pages/default.aspx (last visited June 30, 2020).

involving an inmate in that area, Claimant would have been required to intervene even though he had not yet clocked in for his shift at the time of the incident.

Claimant filed a petition for HLA benefits with the Department. The Department denied Claimant's petition, and the Association appealed the Department's denial on Claimant's behalf. The matter was assigned to Arbitrator Jane Desimone (Arbitrator) for disposition. The Arbitrator conducted an evidentiary hearing on April 18, 2018. Thereafter, by decision and award dated July 12, 2019, the Arbitrator denied the Association's appeal from the Department's denial of Claimant's petition for HLA benefits. In so doing, the Arbitrator reasoned:

> [T]he medical evidence is sufficient to establish that Claimant was injured on December 25, 2017. The medical records submitted by both parties document an increase in symptoms to Claimant's lower back and legs following an event in which he helped a coworker from falling on steps. However, by Claimant's testimony, the event causing his injury occurred before he had clocked in to work on December 25, 2017, outside of SCI-Graterford. By the standard required by the [HLA], Claimant's injury needed to have occurred in the performance of his duties as a [c]orrections [o]fficer at SCI[-]Graterford. Assisting a fellow [corrections officer] before the start of a shift, even if in uniform and in an area in which there are inmates, does not meet this standard. While Claimant testified that he would have been expected to assist in an inmate event in that area, such an event did not occur at the time in question and therefore the injury is not covered by the [HLA].

(Arbitrator's Award at 4.) The Association appealed the Arbitrator's award to this Court.

On appeal, the Association argues that the Arbitrator's award cannot be rationally derived from the parties' CBA because: (1) the Arbitrator failed to properly consider and be guided by an arbitrator's decision in a prior case between

3

the Association and the Department—*i.e.*, *Department of Corrections v. Pennsylvania State Corrections Officers Association* (Sept. 2, 2014) (Colflesh, Jr., Arb.) (*Shalonda Hall* arbitration); and (2) the Arbitrator was not bound to deny Claimant's petition for HLA benefits by any prior judicial opinions.[3]   More specifically, the Association contends that the facts of this case are "substantially the same" as the facts from the *Shalonda Hall* arbitration, and, if the Arbitrator had properly considered the decision from the *Shalonda Hall* arbitration, the Arbitrator would have been compelled to award HLA benefits to Claimant.

The Department, in response, argues that the Arbitrator's award can be rationally derived from the parties' CBA because the Arbitrator was bound by this Court's prior decisions in *Allen v. Pennsylvania State Police*, 678 A.2d 436 (Pa. Cmwlth. 1996), *appeal denied*, 687 A.2d 379 (Pa. 1997), and *Justice v. Department of Public Welfare*, 829 A.2d 415 (Pa. Cmwlth. 2003), *appeal denied*, 842 A.2d 407 (Pa. 2004), to conclude that Claimant's alleged injury did not occur in the performance of his duties.  More specifically, the Department contends that the facts of this case are similar to the facts in *Allen* and *Justice* because in all three cases the injuries occurred on the employers' premises minutes before the start of the employees' shifts.  According to the Department, the Arbitrator, therefore, reached the only conclusion permitted by binding judicial precedent—*i.e.*, that Claimant's alleged injury did not occur in the performance of his duties. The Department further contends that, contrary to the Association's arguments, proper consideration of the decision from the *Shalonda Hall* arbitration does not mandate a reversal of the Arbitrator's award because:  (1) the facts from the *Shalonda Hall* arbitration are

---

[3] In the "Statement of the Questions Involved" section of its brief to this Court, the Association sets forth two issues for our consideration.  We have condensed the Association's arguments into a single issue.

4

distinguishable from the facts of this case; (2) neither the decision from the *Shalonda Hall* arbitration nor this Court's unreported decision in the appeal of the *Shalonda Hall* arbitration—*Department of Corrections v. Pennsylvania State Corrections Officers Association* (Pa. Cmwlth., No. 1756 C.D. 2014, filed Feb. 17, 2015) (*Hall*)—have any binding effect on this case; (3) the language of the parties' prior collective bargaining agreement, which was in effect at the time of the *Shalonda Hall* arbitration, required the arbitrators to be *guided* by judicial precedent, whereas the language of the CBA now requires the arbitrators to be *bound* by judicial precedent; and (4) the decision from the *Shalonda Hall* arbitration was wrong when decided and only upheld by this Court due to the deferential essence test and the language of the parties' prior collective bargaining agreement.

We review an appeal from an arbitration award under the essence test. *Pa. State Corr. Officers Ass'n (Hogan) v. Dep't of Corr.*, 102 A.3d 1045, 1047 (Pa. Cmwlth. 2014). "The essence test is an exceptionally deferential standard, because binding arbitration is a highly favored method of dispute resolution." *Northumberland Cty. Comm'rs v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO Local 2016, Council 86*, 71 A.3d 367, 374 (Pa. Cmwlth. 2013) (en banc). An arbitrator's award, however, must draw its essence from the collective bargaining agreement. *Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 1001-02 (Pa. 2019); *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). Pursuant to the "essence test," an award should be upheld if: (1) the issue, as properly defined, is within the terms of the collective bargaining agreement; and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7*

5

*Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). "That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Cheyney Univ.*, 743 A.2d at 413.

Here, it is undisputed that the first prong of the essence test has been met—*i.e.*, the issue of whether Claimant's injury occurred in the performance of his duties, thereby entitling him to benefits under the HLA, is within the terms of the CBA. Thus, we are left to determine only whether the Arbitrator's award can be rationally derived from the CBA. The CBA provides the Arbitrator with the authority to determine whether Claimant is eligible for benefits under the HLA. In so doing, the CBA requires the Arbitrator to be bound by judicial opinions interpreting the HLA and to be guided by prior decisions from an arbitrator who has decided HLA cases between the Association and the Department. (CBA, App. I; Memo. of Understanding, Art. II, § 2(b)-(c).)

A corrections officer is entitled to receive HLA benefits if he "is injured in the performance of his duties." Section 1 of the HLA, 53 P.S. § 637. The HLA does not define what it means for an injury to occur within the performance of duties. *Colyer v. Pa. State Police*, 644 A.2d 230, 233 (Pa. Cmwlth. 1994). This Court previously concluded that, based on the differences in the purposes of the HLA and the Workers' Compensation Act (WCA),[4] the phrase "in the performance of his duties" is not the equivalent of the phrase "arising in the course of employment" as found in Section 301(c) of the WCA.[5] *Id.* Rather than adopting such a standard, this Court performs a case-by-case, fact-sensitive analysis to determine whether an

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[5] 77 P.S. § 411.

injury has occurred in the performance of duties for purposes of the HLA. *See Lee v. Pa. State Police*, 707 A.2d 595, 598-99 (Pa. Cmwlth. 1998) ("It is obvious that the statutory interpretation of the phrase 'injured in the performance of his . . . duties' is an issue which is factually sensitive, and, because of that, the principles which we articulate today may not be apposite under other circumstances.").

In *Allen*, a state police officer arrived to work early for his scheduled shift and changed into his uniform in a locker room located in the Pennsylvania State Police (PSP) facility. *Allen*, 678 A.2d at 436. Approximately five minutes before the start of his shift, the state police officer attempted to dry his hands with paper towels from a dispenser affixed to the wall of the locker room when the cover of the dispenser popped open, causing him to cut his hand on a metal corner of the dispenser. *Id.* The state police officer applied for HLA benefits, arguing that, even though his injury occurred before the start of his shift, the injury was related to his duties as a state police officer because "he is required to be fully dressed[] and properly groomed[] at the beginning of his shift" and PSP benefited from having its officers available in emergency situations. *Id.* at 438. PSP denied the state police officer's claim for HLA benefits. *Id.* at 437. On appeal, this Court affirmed, holding that the state police officer's injury did not occur in the performance of his duties because "preparing for work, no matter how close chronologically to the beginning of one's shift, is not the same as performing one's duty." *Id.* at 438.

In *McLaughlin v. Pennsylvania State Police*, 742 A.2d 254 (Pa. Cmwlth. 1999), a state police officer was scheduled to work an eight-hour shift with no assigned time for lunch. *McLaughlin*, 742 A.2d at 255. During his shift, the state police officer stopped at a restaurant after placing a radio call notifying the police station that he was taking his lunch break. *Id.* He wore his uniform and

equipment belt into the restaurant and remained accessible to the police station by patrol radio. *Id.* After eating his lunch, the state police officer left the restaurant and proceeded to his patrol car. *Id.* As he did so, the state police officer fell and broke his arm. *Id.* The state police officer applied for HLA benefits, which PSP denied. *Id.* On appeal, this Court reversed the denial of HLA benefits, holding that the injury occurred in the performance of the state police officer's duties because, at the time of the injury, the state police officer was fulfilling his mandatory duty to return to patrol after consuming a meal permitted by PSP field regulation. *Id.* at 259. In reaching this conclusion, we distinguished our prior holdings in *Allen* and another HLA case involving a state police officer:

> [I]t is beyond cavil that the [state police] officers had a duty to come to work for their scheduled shifts properly attired and in a timely fashion. However, in both cases, notwithstanding this duty, we concluded that they were not entitled to benefits pursuant to the [HLA]. These results are justified because the phrase "in the performance of his duties" means officers' duties in their capacities precisely as police officers. In other words, an off-duty officer's obligation to show up on time to work and be properly prepared to undertake one's tasks is not a duty arising from [his] capacity as [a] police officer[] but rather a general duty of every employee and, as such, not within the meaning of the statutory language of the [HLA]. We find that construing the statutory phrase, "in the performance of his duties" to exclude those activities necessary to arrive at work on time and in appropriate attire gives effect to the narrow construction we are mandated to give to the statutory language.

*Id.* at 258 (citations omitted).

In *Justice*, at approximately 6:55 a.m., an employee/trainee at a state hospital was climbing stairs on his way to a second floor training room to attend a 7:00 a.m. mandatory training session when he tripped and fell, causing him to injure his knee. *Justice*, 829 A.2d at 416. The employee/trainee applied for HLA benefits, which the

8

state hospital denied. *Id.* On appeal, this Court affirmed the denial of HLA benefits, holding that "preparatory activities before the actual commencement of work did not amount to performance of duties." *Id.* at 418. In so holding, we noted that "[w]hile each case must be evaluated on its own facts, it is impossible to distinguish this case from *Allen*, where benefits were denied to a [state police officer] injured five minutes before the start of his shift while changing into [his] uniform at the state police facility." *Id.* at 417-18. We also declined to follow our holding in *McLaughlin*, indicating that the state police officer in *McLaughlin* "was injured while on duty, returning to his official vehicle after completing a regulation-permitted[,] mid-shift meal[,]" whereas in this case the employee/trainee "was not yet on duty." *Id.* at 418.

In the *Shalonda Hall* arbitration, a corrections officer arrived at SCI-Graterford in uniform shortly before her scheduled shift. (*Shalonda Hall* Arbitration Decision at 2.) The corrections officer was walking through the main lobby—a secure area where no inmates are present—to clock in for her shift when she slipped on a puddle of water left by melted snow, causing her to fall to the ground and sustain an injury to her left hand. (*Id.*) The corrections officer filed a petition for HLA benefits, which the Department denied. (*Id.*) The Association appealed the Department's denial to arbitration. (*Id.* at 1.) At the time of the appeal, the parties' collective bargaining agreement provided that the "arbitrators should be guided by, but not bound by, case law pertinent to the [HLA]." (*Id.* at 5.) After analyzing the relevant case law—*Allen*, *McLaughlin*, and *Justice*—the arbitrator granted the corrections officer's petition for HLA benefits. (*Id.* at 7.) The arbitrator reasoned:

> I see no way [the corrections officer's] case can be any more controlled by *Allen* or *Justice* than it can be by *McLaughlin*. . . .
>
> . . . .

9

. . . I consider the fact [the corrections officer] was within the confines of the interior of [SCI-Graterford], she was directly heading to the clock in station, she [was in uniform,] and [she was] prepared to exercise "care, custody, and control" of inmates, and—in the event of an emergency she would reasonably be required to exercise that control in the lobby even before officially clocking in. Given these circumstances, I find her to have been in the performance of her duties for purposes of the HLA and will award her benefits.

(*Id.* at 6-7.) On appeal to this Court, we affirmed the arbitrator's decision, noting that, "[a]lthough we may not agree with the [a]rbitrator's determination on the merits, it was not manifestly unreasonable for the [a]rbitrator to conclude [the corrections officer] was in the performance of her duties when the injury occurred." *Hall*, slip op. at 5.

Here, given the deference we must give the Arbitrator's award under the essence test, we simply cannot conclude that the Arbitrator's award cannot be rationally derived from the CBA. Although the Arbitrator may not have discussed the *Allen*, *McLaughlin*, and *Justice* cases, the arbitrator's decision from the *Shalonda Hall* arbitration, or any other judicial precedent in her decision, we can infer from the Arbitrator's analysis that she recognized that she was bound by this Court's decisions in *Allen*, *McLaughlin*, and *Justice* and that she was to be guided by the decision from the *Shalonda Hall* arbitration in making her decision. The Arbitrator's award is consistent with our prior decisions in *Allen* and *Justice*. In both those cases, like in this case, the injury occurred on the employer's premises minutes before the start of the employee's scheduled shift—*i.e.*, before the employee was on duty. Moreover, this case in no way involves a situation like in *McLaughlin*, where the employee was fulfilling a mandatory duty to return to his official vehicle following a regulation-permitted, mid-shift meal.

10

In addition, proper consideration of the arbitrator's decision from the *Shalonda Hall* arbitration does not compel an award of HLA benefits to Claimant under the circumstances. First, the facts from the *Shalonda Hall* arbitration are distinguishable—in the *Shalonda Hall* arbitration, the injury occurred in the main lobby located inside the prison facility, whereas, in this case, the injury occurred outside the prison facility on the stairs leading to the main entrance. Second, the Arbitrator, unlike the arbitrator in the *Shalonda Hall* arbitration, was bound by the CBA to follow this Court's prior decisions in *Allen*, *McLaughlin*, and *Justice*. Third, the Arbitrator was not bound by the arbitrator's decision from the *Shalonda Hall* arbitration, and, given the differences between the *Shalonda Hall* arbitration and this case—*i.e.*, the circumstances surrounding the occurrence of the injury and the language of the CBA—it was reasonable for the Arbitrator both to have been guided by the arbitrator's decision from the *Shalonda Hall* arbitration and to have denied Claimant's petition for HLA benefits.

For all of these reasons, we have no basis on which to believe that the Arbitrator did not follow the binding judicial precedent interpreting the HLA or consider the decision from the *Shalonda Hall* arbitration as required by the parties' CBA. As a result, we must conclude that the Arbitrator's award properly draws its essence from the CBA because the issue of whether Claimant's injury occurred in the performance of his duties is within the terms of the CBA and the Arbitrator's award can be rationally derived from the CBA.

Accordingly, we affirm the Arbitrator's award.

P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Corrections   :
Officers Association (David Panfil),  :
                Petitioner  :
                        :
           v.           :  No. 1057 C.D. 2019
                        :
Commonwealth of Pennsylvania,   :
Department of Corrections,      :
              Respondent  :

# **O R D E R**

AND NOW, this 1st day of July, 2020, the arbitration award dated July 12, 2019, is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge
