IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Corrections,   :
      Petitioner  :
          :
  v.        : No. 1201 C.D. 2022
          :
Pennsylvania State Corrections :
Officers Association,    :
      Respondent : Submitted: December 4, 2023

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE CEISLER        FILED: January 17, 2024

   The Department of Corrections (DOC) petitions for review of the October 7, 2022 Arbitration Award, which awarded benefits under the statute commonly known as the Heart and Lung Act (HLA), Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637-638,[1] to Justin Kerschner for injuries he sustained on January 24, 2022. We affirm.

## Background

   Since August 6, 2012, Mr. Kerschner has been employed by DOC as a Corrections Officer I, most recently at the State Correctional Institution at Frackville (SCI-Frackville). Mr. Kerschner is a member of the bargaining unit known as the Pennsylvania State Corrections Officers Association (PSCOA). PSCOA and DOC

---

[1] The HLA "provides police officers and other public safety employees, who are temporarily unable to perform their duties because of a work injury, their full salar[ies]." *Stermel v. Workers' Comp. Appeal Bd. (City of Phila.)*, 103 A.3d 876, 877 (Pa. Cmwlth. 2014); *see* Section 1 of the Act, 53 P.S. § 637. "[T]he purpose of providing for full salary is to assure those undertaking dangerous employment in certain institutions will continue to receive full income if they are injured while performing their duties." *Lynch v. Com. of Pa. (Workers' Comp. Appeal Bd.)*, 275 A.3d 1130, 1137 (Pa. Cmwlth. 2022).

are parties to a collective bargaining agreement (CBA) covering a bargaining unit consisting of certain employees of DOC and the Commonwealth of Pennsylvania, Department of Human Services.

The operative CBA, which took effect on July 1, 2017, contains an arbitration procedure for claim requests under the HLA. The parties agreed that all disputes relating to a corrections officer's eligibility for benefits under the HLA, including an appeal from DOC's denial of HLA benefits, would be resolved through binding arbitration. Reproduced Record (R.R.) at 63a-64a, 67a. The parties also agreed that the arbitrator "shall be bound by judicial opinions interpreting the [HLA]." *Id.* at 63a, 87a.

On January 23, 2022, Mr. Kerschner worked his regular 8:00 a.m. to 4:00 p.m. shift at SCI-Frackville. Because Mr. Kerschner lives almost one hour away from SCI-Frackville, he got home from his shift around 5:00 p.m. Five hours later, Mr. Kerschner returned to work a mandated overtime shift at SCI-Frackville from 10:00 p.m. to 6:00 a.m.[2] His assignment that evening was to perform a perimeter security check by driving his patrol vehicle around the perimeter of the prison. While patrolling the property, around 4:00 a.m. on January 24, 2022, Mr. Kerschner inadvertently fell asleep at the wheel and crashed his patrol vehicle into a garage.

---

[2] At the arbitration hearing, Mr. Kerschner testified:

> [I]t is an hour commute to go home. So by the time I got home, it was 5:00[ p.m.] In order for me to leave, I have to leave my house to get to work by 9:00[ p.m.], so I have to be ready by 8:30[ p.m.]

> I got home. I showered, [I] ate. I tried to sleep. I couldn't in the two hours I would have had the opportunity to sleep. And then I went to work. So I didn't get any sleep at all.

Notes of Testimony, 6/15/22, at 10-11.

Mr. Kerschner awoke to someone telling him that an ambulance was on the way. DOC did not discipline Mr. Kerschner for this incident.

Mr. Kerschner suffered a concussion in the accident and, while at the hospital, tested positive for COVID-19. At the arbitration hearing, Mr. Kerschner testified that since the accident, he has experienced difficulty with concentration, mood swings, and debilitating headaches.

Two days after the accident, Mr. Kerschner treated with his primary care physician, who confirmed that he had suffered a concussion. Two weeks later, Mr. Kerschner treated with a DOC-approved physician, Dr. David Wood, who diagnosed him with post-concussion syndrome. After his HLA claim was denied, Mr. Kerschner stopped treating with Dr. Wood because he could not afford the out-of-pocket costs.

Mr. Kerschner filed a claim for HLA benefits, which DOC denied, finding that he was not injured "in the performance of his duties" as required by Section 1(a) of the HLA, 53 P.S. § 637(a).[3] DOC reasoned that because Kerschner fell asleep while driving his patrol vehicle, he could not have been "in the performance of his duties" at the time of the accident, because sleeping on the job is expressly prohibited

---

[3] Section 1(a) of the HLA provides, in pertinent part, that any corrections officer employed by DOC

> *who is injured in the performance of his duties . . . shall be paid by the Commonwealth of Pennsylvania . . . his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased.* All medical and hospital bills, incurred in connection with any such injury, shall be paid by the Commonwealth of Pennsylvania . . . . During the time salary for temporary incapacity shall be paid by the Commonwealth of Pennsylvania . . . .

53 P.S. § 637(a) (emphasis added).

3

by DOC's Code of Ethics[4] and punishable by discipline up to and including termination from employment. PSCOA appealed on Mr. Kerschner's behalf.

On October 7, 2022, following an evidentiary hearing, Arbitrator Frank A. Fisher (Arbitrator) awarded Mr. Kerschner benefits under the HLA. In his Opinion, the Arbitrator concluded that Mr. Kerschner's injuries were sustained in the performance of his duties as a corrections officer and, therefore, he was entitled to HLA benefits. The Arbitrator found that Mr. "Kerschner's action in falling asleep while performing the perimeter security check driving a vehicle was not intentional." R.R. at 3a. After reviewing the case law cited by the parties, as well as other cases involving claims for HLA benefits, the Arbitrator concluded as follows:

> On the facts of this case, *I am constrained to find that* [*Mr.*] *Kerschner was in the performance of his duties at the time of the accident.* I agree with PSCOA that there is no evidence that [Mr.] Kerschner was trying to fall asleep at that time. He worked his regular 8:00 [a.m.] to 4:00 [p.m.] shift on January 23 and was mandated to work overtime on the 10:00 [p.m.] to 6:00 [a.m.] shift on January 23/24. [Mr.] Kerschner had refused similar mandated overtime shifts in the past, those which did not, in his opinion, give him the ability to sufficiently rest before the overtime shift. [Mr.] Kerschner had been given a reprimand for these refusals and understood that further discipline would result from similar refusals. So he reported for the overtime shift not having been able to get any sleep in the four[-]hour window available to him between shifts. The outside perimeter security task required him to continuously patrol the outside perimeter in a vehicle. Around 4:00 [a.m.] he fell asleep at the wheel and crashed into a garage causing injuries which resulted in an ambulance trip to the [emergency room]. There it was determined that he suffered a concussion in the accident.
>
> . . . .

---

[4] DOC's Code of Ethics states in relevant part: "*Employees are required to remain alert while on duty; inattentiveness, sleeping or the appearance thereof is prohibited.*" R.R. at 28a (emphasis added).

4

*. . . There is no evidence that* [*Mr.*] *Kerschner's actions in falling asleep were willfully in disregard of* [*DOC's*] *work rule.* Quite simply[,] he did not try to fall asleep. As suggested by PSCOA[,] there may be facts where the employee's actions do establish a willful intention by the employee to stop working and go to sleep, thereby removing [him] from the performance of dut[ies]. That is not the case here. *While* [*Mr.*] *Kerschner's actions in sleeping here may reflect how well he was performing his duties, they do not alter the fact that he was performing his duties. There is nothing in the* [*HLA*] *itself, or in the case law interpreting it, that allows a denial of benefits based on the quality of the employee's performance.*

*Id.* at 6a-8a (emphasis added).[5] Therefore, the Arbitrator concluded that Mr. Kerschner met his burden of establishing his entitlement to HLA benefits. *Id.* at 8a. DOC now appeals to this Court.

## Analysis

DOC raises two issues in its Petition for Review. First, DOC asserts that because the parties' CBA mandates that an arbitrator "shall be bound by judicial opinions interpreting the [HLA]," R.R. at 87a, this Court should not review the Arbitrator's decision under the traditional "essence" test applicable to arbitration award appeals. Pet. for Rev. at 7. Instead, DOC posits that this Court should review the Arbitrator's decision using the same standard of review we apply in a workers'

---

[5] This Court recently stated:

An "arbitrator is authorized to make findings of fact to inform his interpretation of the CBA." *Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, . . . 210 A.3d 993, 1006 ([Pa.] 2019). "An arbitrator's findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the [CBA], an appellate court may not second-guess his findings of fact or interpretation." *Coatesville Area Sch. Dist. v. Coatesville Area Tchrs.' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009).

*Lehigh Cnty. v. Lehigh Cnty. Deputy Sheriffs' Ass'n* (Pa. Cmwlth., No. 788 C.D. 2021, filed Oct. 19, 2023), slip op. at 2 n.1.

compensation appeal – i.e., whether substantial evidence supports the Arbitrator's factual findings, whether the Arbitrator erred as a matter of law, and whether constitutional rights were violated. *Id.*; *see* DOC Br. at 13 (citing Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704). Second, DOC asserts that even if this Court applies the essence test, the Arbitrator's Award does not satisfy that test because it is not rationally derived from the CBA, which requires adherence to binding judicial precedent. Pet. for Rev. at 7. We address each issue in turn.

### 1. Applicable Standard of Review

DOC first asserts that "the only way to vindicate and enforce th[e CBA] language is to subject [the Arbitrator's] opinion[] to the same scope of review applied to any administrative ruling, which necessarily includes error of law, substantial competent evidence, and constitutional violation." DOC Reply Br. at 4. DOC contends that under that standard of review, the Arbitrator's award of HLA benefits to Mr. Kerschner was "a clear error of law and must be reversed." DOC Br. at 19.

Critically, however, DOC cites no case law to support its contention that this Court may apply anything other than the essence test in reviewing the Arbitrator's Award. On the contrary, it is well-settled law that this Court "review[s] an appeal from an arbitration award under the essence test." *Pa. State Corr. Officers Ass'n (Panfil) v. Dep't of Corr.*, 235 A.3d 426, 429 (Pa. Cmwlth. 2020); *see also Millcreek Twp.*, 210 A.3d at 996 (stating that "a reviewing court must apply the highly deferential two-prong 'essence test'" in reviewing an arbitration award). This standard clearly applies in an appeal from an arbitration award granting or denying a petition for HLA benefits. *Accord Panfil*, 235 A.3d at 429; *Pa. State Corr. Officers Ass'n v. Dep't of Corr.*, 102 A.3d 1045, 1047 (Pa. Cmwlth. 2014) (applying "the

6

deferential essence test" in reviewing an arbitrator's decision regarding a corrections officer's claim for HLA benefits). Therefore, contrary to DOC's assertion, we are required to apply the essence test in reviewing the Arbitrator's Award in this case.

## 2. Essence Test

Under the essence test, this Court must affirm an arbitration award if the issue, as properly defined, is within the terms of the parties' CBA and the arbitrator's interpretation can be rationally derived from the CBA. *State Sys. of Higher Educ. (Cheyney Univ.) v. State College & Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999); *see Panfil*, 235 A.3d at 429 ("'The essence test is *an exceptionally deferential standard*, because binding arbitration is a highly favored method of dispute resolution.'") (citation omitted) (emphasis added). Thus, this "[C]ourt will only vacate an arbitrator's award where the award *indisputably and genuinely is without foundation in or fails to logically flow from, the* [*CBA*]." *Cheyney Univ.*, 743 A.2d at 413 (emphasis added). In other words, the question is "not whether th[is] Court agrees with the [a]rbitrator's interpretation of the CBA[,] but whether the [a]rbitrator's interpretation and application of the [CBA] can be reconciled with the language of the [CBA]." *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 38 A.3d 975, 980 (Pa. Cmwlth. 2011).

The parties do not dispute that the issue before the Arbitrator – whether Mr. Kerschner was entitled to HLA benefits – is within the terms of the CBA. Thus, the only issue before this Court is whether the award of HLA benefits to Mr. Kerschner is rationally derived from the parties' CBA.

We begin our analysis of this issue by reviewing the relevant language of the HLA. Section 1(a) of the HLA provides that any corrections officer employed by DOC "who is *injured in the performance of his duties* . . . shall be paid by the

7

Commonwealth of Pennsylvania . . . his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased." 53 P.S. § 637(a) (emphasis added). The HLA, however, does not define the phrase "in the performance of his duties." Our Court has explained:

> The HLA does not define what it means for an injury to occur within the performance of duties. *Colyer v. Pa. State Police*, . . . 644 A.2d 230, 233 (Pa. Cmwlth. 1994). This Court previously concluded that, based on the differences in the purposes of the HLA and the Workers' Compensation Act (WCA), [Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710], the phrase "in the performance of his duties" is *not the equivalent of the phrase "arising in the course of employment"* as found in Section 301(c) of the WCA[, 77 P.S. § 411(c)]. *Id.* Rather than adopting such a standard, *this Court performs a case-by-case, fact-sensitive analysis to determine whether an injury has occurred in the performance of duties for purposes of the HLA. See Lee v. Pa. State Police*, 707 A.2d 595, 598-99 (Pa. Cmwlth. 1998) ("It is obvious that the statutory interpretation of the phrase 'injured in the performance of his . . . duties' is *an issue which is factually sensitive*, and, because of that, the principles which we articulate today may not be apposite under other circumstances.").

*Panfil*, 235 A.3d at 430 (footnotes omitted) (emphasis added). The language of the HLA must "be strictly construed." *Colyer*, 644 A.2d at 233.

This Court has further elucidated:

> On the issue of whether an injury occurs in the performance of duties, recent decisions discuss two considerations: *whether the employee was on or off duty, and what the employee was doing at the time of the injury.* Excluded from consideration is the degree of hazard involved. Also, the site of the injury is completely irrelevant. *Each case involves a fact-sensitive weighing of the relevant considerations.*

*Justice v. Dep't of Pub. Welfare*, 829 A.2d 415, 417 (Pa. Cmwlth. 2003) (internal citations omitted) (emphasis added). With regard to "the activity giving rise to the

8

injury, we inquire whether the function is obligatory, arising from the position as an important public safety employee" and "whether the employee is 'injured as a result of an event which requires an official . . . response.'" *Id.* (citation omitted).

Presently, DOC asserts that the Arbitrator's Award is not rationally derived from the parties' CBA because it is contrary to binding judicial precedent, in violation of the CBA. According to DOC, there is "no question that an award of [HLA] benefits to a sleeping [c]orrections [o]fficer is indisputably without foundation in and fails to logically flow from a CBA[,] which mandates fidelity to binding precedent . . . hold[ing] that sleeping is the opposite of the 'performance of duties.'" DOC Br. at 20. We disagree.

In his Opinion, the Arbitrator reviewed the two decisions DOC cited in, and appended to, its post-hearing brief: *McAlkich v. Pennsylvania State Civil Service Commission* (Pa. Cmwlth., No. 549 C.D. 2010, filed September 16, 2010) (unreported memorandum), and the decision of an arbitrator in *Pennsylvania State Corrections Officers Association (Locher) v. Department of Corrections* (Case No. W-15-203P-H, filed September 19, 2016). Before the Arbitrator, DOC had asserted that in both *McAlkich* and *Locher*, the corrections officers were fired for sleeping on the job and their discharges were upheld because sleeping is specifically forbidden by DOC's Code of Ethics. The Arbitrator, however, found both cases inapposite, stating:

> These cases [cited by DOC] deal with the just cause termination provision of the CBA [between PSCOA and DOC] on one hand and the termination provisions of the [former] Civil Service Act[, Act of August 5, 1941, P.L. 752, *formerly* 71 P.S. §§ 741.1-741.1005, repealed by Section 2 of the Act of June 28, 2018, P.L. 460,] on the other. These cases resolve questions regarding the propriety of the discipline imposed for violations of [the DOC] Code of Ethics sleeping prohibition; *they* [*do not*] *address the* [*HLA's*] *provisions regarding "in*

9

*the performance of dut*[*ies*]*.*" *While the*[ *cases*] *confirm the strength of* [*DOC's*] *work rule and discuss the need for such a rule in the prison setting, they shed no light on the issue presented here.*

R.R. at 79a (emphasis added). We agree with the Arbitrator's analysis, as neither *McAlkich* nor *Locher* involved a claim for benefits under the HLA or an analysis of the HLA's "performance of duties" requirement.

Before this Court, DOC points to two additional cases that it contends the Arbitrator disregarded in reaching his decision: *McLaughlin v. Pennsylvania State Police*, 742 A.2d 254 (Pa. Cmwlth. 1999), and *Mitchell v. Pennsylvania State Police*, 727 A.2d 1196 (Pa. Cmwlth. 1999).[6]

In *McLaughlin*, this Court held that a police officer who was injured while returning to his patrol vehicle after his lunch break was entitled to HLA benefits. We explained:

> [T]he dispositive inquiry to determine if an officer was injured in the performance of his duties [under the HLA] is *whether the officer was engaging in an obligatory task, conduct, service, or function that arose from his or her position* as a State Police officer as a result of which an injury occurred, irrespective of whether the officer was on duty at the time.

*McLaughlin*, 742 A.2d at 257. We concluded that the officer injured himself while attempting to fulfill his duty to go back out on patrol after completing his lunch. Therefore, we held that because "he sustained injuries in the performance of his duty in his capacity as a police officer to go out on patrol, he is entitled to benefits pursuant to the [HLA]." *Id.* at 259.

In *Mitchell*, a police officer was injured when he left the police barracks, near the end of shift, to warm up his personal vehicle in preparation for his drive home.

---

[6] Notably, DOC did not mention either of these cases in its post-hearing brief submitted to the Arbitrator. *See* R.R. at 52a-53a.

10

This Court upheld the denial of HLA benefits, even though the officer was injured while he was technically still on duty. We reasoned that because the officer was under no "official" obligation to warm up his personal vehicle, he had "deviat[ed] from those [police] duties to perform a 'personal mission,' to borrow a term from workers' compensation law parlance." *Mitchell*, 727 A.2d at 1198.

We do not find *McLaughlin* or *Mitchell* particularly instructive on the specific issue before this Court. These cases, as well as others interpreting Section 1(a) of the HLA, focused on whether the employee was on or off duty at the time of his injury and whether the employee was performing an obligatory task, conduct, service, or function of his job duties at the time of his injury. *See, e.g.*, *McLaughlin*, 742 A.2d at 259-60 (awarding HLA benefits to an on-duty trooper returning to his patrol vehicle after a mid-shift meal); *Lee*, 707 A.2d at 599 (denying HLA benefits to an off-duty trooper injured while driving to a state police facility to begin his shift); *Allen v. Pa. State Police*, 678 A.2d 436, 439 (Pa. Cmwlth. 1996) (denying HLA benefits to a trooper injured five minutes before the start of his shift while he was changing into his uniform on the state police premises); *Colyer*, 644 A.2d at 233 (awarding HLA benefits to an on-duty officer required to cooperate with an internal investigation arising from his trial testimony).

In this case, however, Mr. Kerschner was indisputably "on duty" at the time of his injuries, as he was in the midst of performing the obligatory task of patrolling the perimeter of the prison that he was assigned to do. Consequently, the only question here is whether Mr. Kerschner's act of inadvertently falling asleep *while performing his assigned duty* precludes an award of HLA benefits.

DOC urges this Court to conclude that, even though Mr. Kerschner was on duty at the time of the accident, his act of falling asleep necessarily removed him

from "the performance of his duties" under the HLA because DOC's Code of Ethics expressly prohibits sleeping on the job. However, none of the cases on which DOC relies supports such a conclusion, nor have we found any. Contrary to DOC's proposition, there is no hard-and-fast rule in our jurisprudence that falling asleep in the midst of performing an obligatory job function automatically precludes an award of HLA benefits. Rather, our case law directs that when reviewing a claim for HLA benefits, this Court must "perform[] a *case-by-case, fact-sensitive analysis* to determine whether an injury has occurred in the performance of duties." *Panfil*, 235 A.3d at 430 (emphasis added); *see also Justice*, 829 A.2d at 417 (stating that a determination regarding HLA benefits requires "*a fact-sensitive weighing of the relevant considerations*") (emphasis added); *Lee*, 707 A.2d at 598-99 ("[T]he statutory interpretation of the phrase 'injured in the performance of his . . . duties' is *an issue which is factually sensitive, and, because of that, the principles which we articulate today may not be apposite under other circumstances.*") (emphasis added).

Weighing the relevant considerations in this case, and considering the unique factual circumstances, we conclude that Mr. Kerschner was "in the performance of his duties" at the time of his injuries. While Mr. Kerschner admitted that he fell asleep at the wheel on the morning in question, there is no evidence that he was trying to fall asleep or that he intentionally disregarded DOC's sleeping prohibition. This was clearly an isolated incident. After completing his regular eight-hour shift on January 23, 2022, Mr. Kerschner was mandated to work overtime in the overnight hours that same day. As the Arbitrator found, "[Mr.] Kerschner had refused similar mandated overtime shifts in the past, those which did not, in his opinion, give him the ability to sufficiently rest before the overtime shift. [Mr.] Kerschner had been

12

given a reprimand for these refusals and understood that further discipline would result from similar refusals." R.R. at 78a. The record shows that, factoring in his one-hour commute to and from SCI-Frackville, Mr. Kerschner was home for only four hours between shifts and was unable to sleep during that time. Toward the end of his overnight shift, he unintentionally dozed off at the wheel and crashed his vehicle while performing the perimeter security check. As the Arbitrator aptly observed: "[T]here may be facts where the employee's actions do establish a willful intention by the employee to stop working and go to sleep, thereby removing [him] from the performance of dut[ies]. That is not the case here." *Id.* at 79a; *see McLaughlin*, 742 A.2d at 258 n.2 ("*Where an officer is on duty, it is more likely that an injury which occurs is one that occurs in the performance of his duties* in contrast to where an officer is not on duty and an injury occurs.") (emphasis added).

In light of the deference we must give the Arbitrator's decision under the essence test, we conclude that the Arbitrator's Award was rationally derived from the parties' CBA. In his Opinion, the Arbitrator properly considered and applied binding precedent interpreting the HLA's "in the performance of his duties" requirement, consistent with the CBA. We find no error in the Arbitrator's conclusion that Mr. Kerschner's act of falling asleep while patrolling the prison in the early morning hours of January 24, 2022, occurred "in the performance of his duties," thereby entitling him to HLA benefits.[7]

---

[7] In the Argument section of its appellate brief, DOC references public policy arguments in support of its appeal, presumably in an attempt to invoke the public policy exception to the essence test. *See* DOC Br. at 22-24. However, DOC failed to raise the public policy exception in the Statement of Questions Involved section of its brief. Therefore, we conclude that DOC has waived this claim. *See* Pa.R.A.P. 2116(a) ("*No question will be considered* unless it is stated in the statement of questions involved or is fairly suggested thereby.") (emphasis added).

## Conclusion

We conclude that the Arbitrator's Award properly draws its essence from the parties' CBA, because the issue of whether Mr. Kerschner's injuries occurred in the performance of his duties under the HLA was within the terms of the CBA and the Award was rationally derived from the CBA. Accordingly, we affirm the Arbitration Award.

_____
ELLEN CEISLER, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Department of Corrections, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1201 C.D. 2022 |
| | : | |
| Pennsylvania State Corrections | : | |
| Officers Association, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 17th day of January, 2024, the Arbitration Award entered on October 7, 2022 is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge